The PEOPLE of the State of Colorado,
Plaintiff-Appellee,

v.

Eddie A. SALAZAR,
Defendant-Appellant.

No. 79CA0622.

Colorado Court of Appeals,
Div. I.

Nov. 27, 1981.

As Modified on Denial of Rehearing
Dec. 24, 1981.

Certiorari Denied June 28, 1982.

J. D. MacFarlane, Atty. Gen., Richard F. Hennessey, Deputy Atty. Gen., Mary J. Mullarkey, Clement P. Engle, Asst. Attys. Gen., Denver, for plaintiff-appellee.

J. Gregory Walta, State Public Defender, Richard J. Lacouture, Richard P. Holme, Sp. Deputy State Public Defenders, Denver, for defendant-appellant.

STERNBERG, Judge.

The defendant, Eddie A. Salazar, was convicted of two counts of sexual assault on a child by use of force, intimidation, or threat. He appeals, alleging error on several grounds. We affirm.

While Salazar was attending a New Year's Eve party at a friend's home, he became drunk and was directed to a bed-

**158**

room in the home where he could "pass out." While there, however, he encountered two girls, one 9 and one 10-years-old. The sexual assaults allegedly occurred shortly thereafter.

Later that night Salazar was taken into custody at his residence and was informed that he was under arrest for sexual assault on a child, to which he responded, "Yeah, I know." Two days later, while in custody, Salazar was interrogated at the police station. After advising him of his *Miranda* rights the police asked Salazar if he wanted to talk "about the reason he was in jail." He responded, "I will talk to you on some things." The officer then asked if he would talk about the incident in question, and he replied, "I know I need help so I would like to talk to my mom and my lawyer."

The interrogating officer testified at a suppression hearing that Salazar's response was "a continuous statement" made in the context of the officer advising Salazar of his right to counsel. Nevertheless, at trial this response was broken into two parts, and testimony that Salazar had stated "I know I need help" was allowed into evidence. Admission of this statement leads to what we perceive to be the principal contention of error on appeal.

We agree that the court erred in admitting any part of this statement into evidence, and, indeed, by admitting only a portion of the statement, the error was compounded. The context of the request is placed in a false light: The meaning changes from one that merely notes Salazar's legal dilemma to one that inferentially is an admission of a psychiatric disorder manifested by his guilt of the crime with which he stands accused. Nevertheless, here the evidence of guilt was overwhelming, and, thus, we conclude that the error was not sufficiently prejudicial to require reversal.

In particular, we note that Salazar's response to the police when he was informed that he was under arrest for sexual assault on a child was, "Yeah, I know." Thus, the later statement objected to was merely cumulative to this response. We also note that the jury did learn of the complete statement, "I know I need help so I would like to talk to my mom and my lawyer" because it was brought up on cross-examination of the interrogating police official. Furthermore, that the assaults did occur at a time when defendant was the only possible perpetrator was established by strongly credible evidence.

■ Because of this overwhelming evidence of guilt and the cumulative nature of the evidence in question, the People urge that receipt into evidence of the statement was harmless error. The issue presented is a close one, and the offering of all of this statement, or, even worse half of it, can only be characterized as reckless. Because the statement was merely cumulative, because the complete statement eventually did get to the jury, and because other evidence of guilt is so overwhelming, we hold that admission of the statement was harmless beyond a reasonable doubt since it could not have contributed to the guilty verdict. *See Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). *See also People v. Myrick*, Colo., 638 P.2d 34 (1981).

Salazar next contends that there is an apparent conflict in language of § 18–3–401 and 18–3–405, C.R.S.1973 (1978 Repl. Vol. 8). Section 18–3–405 makes criminal the conduct by anyone "who *knowingly* subjects another not his or her spouse to any sexual contact . . . ." (emphasis supplied). Section 18–3–401 defines several terms. It states that "unless the context otherwise requires . . . sexual contact means the *intentional* touching of the victim's intimate parts." (emphasis supplied).

Salazar alleges that these two sections either provide conflicting requirements for proof of mental state, or that, alternatively, the mental state described by the term "knowingly" is modified by the inclusion in the definitional statute of the term "intentional," and that the jury should have been instructed accordingly. Consequently, he alleges that the court's instruction requiring only general intent and not specific intent was error. We disagree.

■ When § 18–3–405 was enacted in 1971 (then entitled C.R.S.1963, 40–3–408

(1971 Cum.Supp.)), it did not contain the term "knowingly." The mental state required at that time was inferred from the definitional section, C.R.S.1963, 40–3–409, which reads very similarly to the present definitional section, § 18–3–401(4). The General Assembly amended the statute in 1977, specifically injecting the term "knowingly," into § 18–3–405, but not deleting "intentional" from 18–3–401. Thus, it seems clear that the General Assembly intended that the mental state requirement for this crime be described as "knowingly," and that this amendment supersedes any indication of *mens rea* suggested by the term "intentional" in § 18–3–401. Since it is clear that the "context otherwise requires," the instructions given by the trial court, phrased in the language of the statute, were adequate and sufficient. *See Blincoe v. People*, 178 Colo. 34, 494 P.2d 1285 (1972).

■ Contrary to Salazar's next contentions, the instructions to the jury on the aggravating factors of force, intimidation, or threat were proper. There was evidence of use of force, and thus, the instruction was appropriate. *See People v. Sexton*, 192 Colo. 81, 555 P.2d 1151 (1976).

■ Salazar next asserts that because of the tender years of the complaining witnesses their testimony was inherently suspect and the court did not conduct a properly detailed examination to determine their competency before allowing them to testify. The trial court's examination of these witnesses was not as exhaustive as it should have been; however, it was not so inadequate as to lead to the conclusion that the court abused its discretion in allowing the children to testify. *See Wesner v. People*, 126 Colo. 400, 250 P.2d 124 (1952). And, the record of the testimony of these children indicates that it was coherent and consistent one with the other. Thus, any error potentially committed by the perfunctory preliminary examination of the girls was cured during the course of trial. *See Hood v. People*, 130 Colo. 531, 277 P.2d 223 (1954).

■ The final assertion of error is that the prosecutor committed reversible error in closing argument to the jury when he urged them to "tell Mr. Salazar that this crime won't be tolerated in this community." We do not approve of such an appeal to emotion; however, we do not consider that these remarks were so objectionable as to lead to the holding that the trial court abused its discretion in denying the motion for mistrial directed at them. Trial courts are in the best position to evaluate the effect of improper remarks. *People v. Ferrell*, Colo., 613 P.2d 324 (1980). Thus, while the remark was improper, *see People v. Sepeda*, 196 Colo. 13, 581 P.2d 723 (1978), we, nevertheless, presume that the jury understood and heeded the trial court's general instruction that the comments of counsel were not evidenced and, thus, decline to reverse on this point.

The judgment is affirmed.

COYTE and KIRSHBAUM, JJ., concur.