The PEOPLE of the State of Colorado,
Plaintiff-Appellee,

v.

George Louis MARIN,
Defendant-Appellant.

No. 82CA0432.

Colorado Court of Appeals,
Div. I.

Dec. 29, 1983.

Rehearing Denied Feb. 9, 1984.

Certiorari Denied Aug. 7, 1984.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Joel W. Cantrick, Sol. Gen., Robert M. Petrusak, Asst. Atty. Gen., Denver, for plaintiff-appellee.

David Vela, Colorado State Public Defender, Terri L. Brake, Chief Appellate Deputy, Denver, for defendant-appellant.

BERMAN, Judge.

Following trial to a jury, defendant, George Marin, was convicted of the first degree murder of Charles Wood and sentenced to life imprisonment. The sole issue raised in defendant's motion for a new trial was the sufficiency of the evidence supporting his conviction. Nevertheless, defendant now appeals based upon a trial court ruling prohibiting him from eliciting certain character evidence on cross-examination of a prosecution witness and upon a host of allegedly improper and unprofessional statements by the prosecutrix in her closing and rebuttal arguments. We affirm defendant's conviction.

The facts surrounding the murder are as follows: On the evening of August 20, 1980, fifteen-year-old James Gurule was asked by the defendant to accompany him and Charles Wood to meet the defendant's new girlfriend. Before leaving James' home, defendant showed James a .38 cali-

ber long barrel handgun, loaded the weapon, and pointed it at James' head. James immediately pushed the hand with the weapon away from his face, whereupon defendant fired a shot into the floor. Defendant then told James to put his shirt on and get into Wood's car.

The defendant, James, and Wood then drove to Barnum Park about 9:00 p.m. Wood was driving, the defendant was seated in the front-passenger seat, and James was situated between them. Defendant told Wood where to park so that defendant could "meet someone." Defendant then got out of the car and walked away.

When defendant returned about five minutes later, Wood was still sitting behind the wheel with his window open and with James immediately beside him. Defendant ordered James to get out of the car. James complied, but then crouched by the rear of the car. As James watched, defendant shot Wood, Wood's hands went up in the air, and defendant shot him again.

After James' supplications to defendant that he not shoot him as well, defendant explained to James the reason he shot Wood was that Wood was "bugging my girlfriend." Defendant then described, in a joking manner, how he shot Wood "once in the eye and once in the head." Defendant then threatened James if he told anyone about the murder.

The defendant and James then walked to a bar, whereupon defendant took a cab to his girlfriend's house and James ran home. James told his brother, and ultimately the police, what had happened that night. Subsequent actions and statements by defendant corroborated James' account of the homicide.

I.

Defendant's first contention is that the trial court denied his right to present evidence in his own defense in violation of the Sixth Amendment of the United States Constitution and Article 2, Sections 16 and 25, of the Colorado Constitution. At trial, defense counsel sought to elicit an answer from prosecution witness James Gurule as to the "kind of a person" the defendant

was. Specifically, defendant here challenges the trial court's sustaining of a relevancy objection to defense counsel's question. We find no error in the trial court's ruling.

Initially, we note that the defendant failed to raise this issue of the exclusion of character evidence in his motion for new trial. Therefore, we apply the plain error standard to our review of this issue. *Vigil v. People*, 196 Colo. 522, 587 P.2d 1196 (1978).

While a trial court should allow a defendant wide latitude in cross-examining his accusers, "the particular line drawn marking that latitude is a matter within the sound discretion of the trial court." *People v. McCall*, 43 Colo.App. 117, 603 P.2d 950 (1979). Here, we cannot say this discretion was abused because the inquiry that was disallowed was outside the scope of anything asked by the prosecution on its direct examination of this witness. The right of cross-examination extends only to areas encompassed in direct examination, and anything outside of direct examination is completely discretionary with the court. *See People v. Homan*, 185 Colo. 56, 521 P.2d 1262 (1974).

In addition, the trial court's ruling that such cross-examination would not be permitted did not preclude defendant from calling James or anyone else as his own witness to testify as to pertinent character traits, as allowed by CRE 404(a)(1). Therefore, defendant was not denied his right to present evidence in his own defense; rather, he was merely foreclosed from doing so in a particular manner.

Moreover, in view of the other evidence against defendant, including defendant's preparation for the murder by brandishing a gun, the five-minute period prior to the murder during which defendant took a walk and had ample time to "exercise reflection and judgment," as well as the defendant's joke-like remark following the murder, any error in limiting cross-examination of James would be harmless. *People v. McCall, supra.* Given the over-

whelming evidence of the circumstances surrounding the murder, we cannot say that the prosecution's case would have been "significantly less persuasive" had the cross-examination regarding the defendant's allegedly impulsive character been allowed. Hence, the trial court ruling does not constitute plain error. *People v. Barker*, 180 Colo. 28, 501 P.2d 1041 (1972).

## II.

■ Defendant's second contention is that the prosecution's closing and rebuttal arguments were of such a nature as to deny defendant his right to a fair trial. Because defendant failed to present these allegations to the trial court, we review each of them using a plain error standard, *People v. Harris*, 633 P.2d 1095 (Colo.App. 1981), and, applying that standard, find no basis for reversal.

### A.

■ The defendant's first argument regarding prosecutorial misconduct is that the prosecutrix violated *ABA, Standards for Criminal Justice*, Standard 3–5.8(a) (2d ed. 1982), by stating in her closing argument: "James tells you that Charles [Wood] puts his hands up in a defensive gesture." Defendant contends that the characterization of Charles Wood's movement as a "defensive gesture" was improper because it was "misleading to the jury," "based solely on an answer to an improper leading question by the prosecutor," and contradicted forensic evidence in the case to the effect that any purposeful movement would have stopped with the first gunshot wound. We disagree.

*ABA, Standards for Criminal Justice*, Standard 3–5.8(a) (2d ed. 1982), provides as follows:

"The prosecutor may argue all reasonable inferences from evidence in the record. It is unprofessional conduct for the prosecutor *intentionally* to misstate the evidence or mislead the jury as to the inference it may draw." (emphasis added)

Here, James Gurule testified during direct examination by the prosecutrix that, between the first and second gun shot, he saw Charles Wood's hands "go up in the air," and in response to a query by the prosecutrix as to whether Wood's hands were up "[l]ike he was trying to protect himself," Gurule responded, "Yes." Given that testimony in the record, we see nothing misleading about that portion of the prosecution's closing argument challenged here.

Furthermore, the briefs and record are completely devoid of any evidence to suggest that any other minor misstatements of the evidence by the prosecutrix were intentional. To the contrary, the prosecutrix specifically verbalized her intent not to misstate the evidence and admonished the jury to rely on their own memory of the evidence should they remember it differently than she. Additionally, we note that defense counsel did not object to any leading questions by the prosecutrix during the portion of James' testimony referred to herein.

### B.

■ Defendant next charges that the prosecutrix violated *ABA, Standards for Criminal Justice*, Standard 3–5.8(b) (2d ed. 1982), which states:

"It is unprofessional conduct for the prosecutor to express his or her personal belief or opinion as to the truth or falsity of any testimony or evidence or the guilt of the defendant."

Such expressions of personal belief by a prosecutor are also forbidden by the Code of Professional Responsibility. *See* Code of Professional Responsibility Disciplinary Rule 7–106(C)(4). However, upon review of the prosecution's closing and rebuttal arguments, we find not so much as a single reference by the prosecutrix regarding her personal opinion as to the truth or falsity of any testimony or evidence or as to the guilt of the defendant. The prosecutrix's occasional use of the first person and her failure to use a tone of nonchalance when referring to the death of Charles Wood do not constitute unethical expressions of personal belief, nor did they deny defendant a fair trial.

### C.

■ The defendant next contends that the prosecutrix made comments which were "calculated to arouse the jurors' emotions," in contravention to *ABA, Standards for Criminal Justice*, Standard 3-5.-8(c) (2d ed. 1982). Specifically, defendant alleges that the prosecutrix violated the standard by adducing emotional identification of the jurors with Charles Wood, and by using the words "cruel," "senseless," and "brutal" in reference to the murder of Charles Wood. On the same grounds, the defendant objects to the prosecutrix's argument in closing that defendant had "no regard for life in general," as well as the prosecutrix's call on the jurors to convict the defendant as a statement that "we will not permit this kind of behavior to go on in our community."

Insofar as the prosecutrix's remarks to the effect that Charles Wood was once "living and breathing, just as you and I are doing today," we find no improper "personalization" of the victim's death. Death is a very personal concept and one which, if spoken of in purely an abstract, antiseptic manner, is drained of its meaning.

As regards the prosecutrix's use of the adjectives "cruel," "senseless," and "brutal" in reference to the murder, as well as her argument as to defendant's disregard for human life, we find no calculation on the part of the prosecutrix to inflame the racial, religious, ethnic, political, economic, or other prejudices of the jurors. Furthermore, it is doubtful that the passions of the jurors were set afire by the use of such common words and phrases which, after all, represented conclusions fairly deduced from the evidence.

Regarding the prosecution's admonition to the jury that they "not permit this kind of behavior," we are mindful that we disapproved a similar statement as an "appeal to emotion" in *People v. Salazar*, 648 P.2d 157 (Colo.App.1981), although we, nevertheless, affirmed defendant's conviction in that case. Here, however, not only does the comment of the prosecutrix fail to rise to the level of plain error, but also, unlike in *Salazar*, the remark here fails to constitute error of any sort. For here, the prosecutrix specifically directed the jurors' attention to the *evidence* in the case and asked them to draw their conclusion based upon those facts, as opposed to emotion. Thus, here, the prosecutrix was not overzealously seeking to subvert the truth or the jurors' fact-finding abilities beneath a mountain of emotional appeal. The prosecutrix's remarks did not "so inflame and impassion the jury that it would not render a fair and impartial verdict." *People v. Elliston*, 181 Colo. 118, 508 P.2d 379 (1973).

### D.

Defendant next contends that the prosecutrix improperly urged jurors to consider matters outside the record, namely: their own experience with the use of guns, in violation of *ABA, Standards for Criminal Justice*, Standard 3-5.8(d) (2d ed. 1982), by stating:

> "Ladies and gentlemen, those of you that own guns or used guns know that you don't point a gun at another person unless you intend to use it and that's exactly what he did and he did it after he deliberated, after he thought about it."

Again, we disagree with defendant's assessment of the prosecution's argumentation in that we see no violation of Standard 3-5.8(d). That standard provides:

> "The prosecutor should refrain from argument which would divert the jury from its duty to decide the case on the evidence, by injecting issues broader than the guilt or innocence of the accused under the controlling law, or by making predictions of the consequences of the jury's verdict."

■ Juries are entitled to use their own "common experience and common observation," *see Hinton v. People*, 169 Colo. 545, 458 P.2d 611 (1969), *cert. denied*, 397 U.S. 1047, 90 S.Ct. 1375, 25 L.Ed.2d 659 (1970); *see also Thompson v. People*, 181 Colo. 194, 510 P.2d 311 (1973), and they are permitted to draw "any reasonable inference of guilt from the evidence" before them, *Mathis v. People*, 167 Colo. 504, 448 P.2d 633 (1968). In fact, the jury's very

function is to use its "common sense and ordinary experience" in evaluating the evidence. *People v. Anderson*, 637 P.2d 354 (Colo.1981) (fn. 14). Therefore, the prosecutrix did not err in asking the jurors to draw any reasonable inferences, based on their own common experiences, from the evidence. Further, the prosecutrix injected no issues broader than the guilt or innocence of the accused.

### E.

Finally, the defendant contends that, in violation of the principles stated in *Griffin v. California*, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965), the prosecutrix unconstitutionally burdened his right to remain silent at trial by commenting upon his failure to testify. Again the record does not support this contention.

Here, the prosecutrix merely stated that: "Mental things [are] very difficult to prove. I can't tell you—I can't present a witness that can tell you exactly when [the] decision [to kill Charles Wood] was made. I can't, again, present a witness to explain to you why he took James with him."

The prosecutrix then went on to hypothesize the possible reasons that James was asked to accompany the defendant, after which the prosecutrix summarized her theory of the case by stating that the defendant planned and acted with deliberation in the murder of Charles Wood.

An honest statement by the prosecution that it has failed to present a witness who can give direct evidence on a particular point, such as the fact of defendant's deliberation; but that the jury may rely on circumstantial evidence because mental states are "very difficult to prove," does not amount to a comment on defendant's right not to testify. In determining the meaning and effect of a particular prosecutorial remark, "it must be construed by reference to or in light of the context or argument as a whole, and in light of the evidence." *People v. McGill*, 190 Colo. 443, 548 P.2d 600 (1976), *overruled on other grounds, People v. Bridges*, 199 Colo. 520, 612 P.2d 1110 (1980). In the present

case, just as in *McGill*, the foregoing remarks of the prosecutrix, properly construed and in the context in which they were made, "merely expressed the proposition that the evidence is sufficient to sustain a conviction." *People v. McGill, supra.*

*Montoya v. People*, 169 Colo. 428, 457 P.2d 397 (1969), cited by defendant, is inapposite. In contrast to the remarks at issue there, here the prosecutrix made no reference to the fact that the jury had heard nothing from the defendant. The facts of the present case are much closer to *People v. Keener*, 38 Colo.App. 198, 559 P.2d 243 (1976), *aff'd*, 194 Colo. 244, 572 P.2d 463 (1977), than to *Montoya, supra*. In *Keener*, we held that the prosecution's statement on rebuttal that: "I raised some questions, challenged them to be answered. I don't think they were answered ...." did not constitute comment on the failure of the defendant to testify. We reach the same result in the instant case.

In summary, our Supreme Court has held "on numerous occasions" that "prosecutorial misconduct in closing arguments rarely, if ever, is so egregious as to constitute plain error ... so that we may consider it on appeal absent a contemporaneous [o]bjection." *People v. Sepeda*, 196 Colo. 13, 581 P.2d 723 (1978). This case is no exception.

In deciding this case, we fully embrace the principle that a prosecutor's duty is never "merely to convict, but to see that justice is done by seeking the truth of the matter ... to ensure that the jury tries the case solely on the basis of the facts presented to them." *People v. Elliston, supra*. However, here, we note that most of the defendant's allegations of prosecutorial misconduct readily condense into a protestation against the effectiveness, as opposed to the fairness or accuracy, of the prosecution's argumentation. And we emphasize that a prosecutor, while not at liberty to strike foul blows, is free to strike hard blows. *Berger v. United States*, 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314 (1935);

*People v. Trujillo,* 624 P.2d 924 (Colo.App. 1981).

■ Here, the prosecutrix's remarks, neither individually nor collectively, indicated a "misplaced zeal to win the case," *People v. Mason,* 643 P.2d 745 (Colo.1982), nor was defendant's right to a fair trial "endangered" in any way by any of the prosecutrix's statements in closing or rebuttal, *see People v. Mason, supra.* Where, as here, we find not only the absence of reversible error, but also the absence of any error whatsoever in each of the contested prosecutorial statements, there can be no cumulative error. The sum total of a number of zeros can never equal one.

Judgment affirmed.

PIERCE, J., concurs.

METZGER, J., concurs in result only.