The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Timothy JAMES, Defendant–Appellant.

No. 97CA1466.

Colorado Court of Appeals, Div. II.

Oct. 29, 1998.

Rehearing Denied Dec. 10, 1998.

Certiorari Denied July 26, 1999.*

Gale A. Norton, Attorney General, Martha Phillips Allbright, Chief Deputy Attorney General, Richard A. Westfall, Solicitor General, Kathleen M. Byrne, Special Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

David F. Vela, Colorado State Public Defender, Cynthia Camp, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge CRISWELL.

Defendant, Timothy James, appeals from the judgment of conviction entered on jury verdicts finding him guilty of second degree kidnapping, aggravated theft of a motor vehicle, and attempted aggravated robbery. We affirm the kidnapping and theft convictions, but vacate defendant's conviction of attempted aggravated robbery.

The facts, viewed most favorably to the People, established that defendant and another person solicited a ride in the victim's motor vehicle. Then, while in the back seat of the vehicle, defendant grabbed the victim, put a fist to her throat, placed a knife against her side, and directed that she drive to a dead end road in a sparsely populated area. When the victim stopped the vehicle at this location, however, she was able to disarm the defendant and jump out of the car, taking the keys with her. Shortly thereafter, police arrested defendant in the vicinity, and he admitted the essential facts of the incident.

## I.

Defendant first argues that all of his convictions must be reversed because the trial court denied his challenge for cause to two prospective jurors and because of that court's denial of his request for a mistrial based upon the prosecutor's allegedly improper closing argument. We reject both assertions.

## A.

The incident upon which the charges against defendant were based received some local publicity, and the written questionnaires prepared by prospective jurors reflected that several of them had read or heard news accounts of the incident and had formed an initial opinion based upon these accounts. After considering each of these questionnaires, the court and counsel for both parties agreed that certain persons should be excused without further questioning, a few should be examined in chambers, outside the presence of others, and the rest should be questioned collectively while they were in the jury box in the courtroom.

Defendant challenges the manner in which two of the prospective jurors were examined by the court in its chambers and its refusal to excuse either for cause.

In the case of one prospective juror, the court explained that, just because someone is accused of a crime, that person might not be the person involved or that no crime may have been committed. An explanation was also given of the presumption of a defendant's innocence. Then, in response to the court's specific inquiry, the prospective juror assured it that she could set aside any previous opinions she may have formed based on the news accounts and make any decision as to defendant's guilt only on the evidence presented.

Later, in response to questioning by counsel, this prospective juror indicated that any opinion she had expressed in her written questionnaire had been "too hasty" and had been a mere "spontaneous knee jerk response." Based on her responses, the court denied defendant's challenge for cause.

The second prospective juror stated that he had only a vague recollection of the incident from the news accounts. However, he indicated that, based upon his then present knowledge, he was probably "leaning ... against the defendant."

Nevertheless, upon the court's explanation of the concepts of the prosecution's burden of proof and the presumption of innocence to which defendant was entitled, this prospective juror agreed that, if the prosecution failed to fulfill its burden, he would have the responsibility of voting to acquit the defendant. He said that he was willing to follow the court's instructions on the law and acknowledged that, if he were to disregard the news account of the incident, and were required to make a decision at that point, he would be required to acquit defendant because no evidence had been presented of his guilt.

Defendant challenged this juror for cause, and the court denied that challenge.

As noted, defendant first challenges the manner in which the court conducted the examination of these two jurors. He asserts that the court's questions were "leading" and were designed to "rehabilitate" each of them before defendant was given an opportunity to ask any questions. We reject this argument. Section 16–10–103(1), C.R.S.1998, makes clear that no person shall be disqualified from service as a juror because of "a previously formed or expressed opinion," so long as "the *court* is satisfied, from the examination of the juror" and other information, that the juror "will render an impartial verdict according to the law and the evidence ...." (emphasis supplied) *See also* Crim. P. 24(a)(2) ("The judge shall ... ask the prospective jurors any questions which [the judge] believes are pertinent to their qualifications to serve as jurors in the case on trial.").

██ Here, the two prospective jurors had expressed some opinion of defendant's guilt. Hence, the court was obligated under the pertinent statute and rule to satisfy itself that they would, nevertheless, render an impartial verdict. And, the questions asked by the court were directed to eliciting information upon this subject. Those questions were

no more leading than the requirements for the inquiry demanded, and the fact that the *answers* to those questions "rehabilitated" these individuals, by negating their possible bias against defendant, did not render the court's questioning improper.

Further, given the answers made to both the court's and counsel's questions, the court did not abuse its discretion or otherwise err in denying defendant's challenge for cause. *See People v. Janes,* 942 P.2d 1331 (Colo. App.1997).

### B.

We also reject defendant's claim that the prosecutor's closing argument was so improper as to warrant a mistrial.

■ We recognize that it is improper for a prosecutor to ask jurors to place themselves in a victim's position. *People v. DeHerrera,* 697 P.2d 734 (Colo.1985). However, our review of the record here convinces us that the prosecutor's use of the pronoun "you" was not meant to refer to the jurors. Rather, it was used as a part of a rhetorical question in an argument designed to convince the jury that the victim's actions were reasonable. The prosecutor's question, "What are you supposed to do ... ?" referred not to the jurors, but to any person who found himself or herself in the victim's circumstances. Thus, while one might question the relevancy of such an argument here, given the issues presented for resolution, it was not otherwise improper.

The second challenged remark was, in effect, that, while Greeley had not previously been the site of violent crime, violence had now found the community. That remark may have been improper. However, such a fleeting remark did not warrant a mistrial, *see People v. Salazar,* 648 P.2d 157 (Colo. App.1981), and defendant made no request for any other relief.

### II.

■ We agree with defendant, however, that his convictions of both aggravated motor vehicle theft and *attempted* aggravated robbery are inconsistent to the extent that his conviction of theft necessarily demonstrated

that he was guilty of the *commission* of the crime of aggravated robbery, an offense with which he was not charged, rather than an attempt to commit that offense. While proof of a greater offense would normally support a conviction of a charged lesser included offense, we conclude that, here, defendant's conviction of attempted aggravated robbery must be vacated.

The offense of aggravated motor vehicle theft with which defendant was charged and convicted is defined in § 18–4–409(2)(d), C.R.S.1998. That definition includes the requirement that the accused:

> knowingly *obtains or exercises control* over the motor vehicle of another without authorization or by threat or deception and ... uses the ·motor vehicle in the commission of a crime other than a traffic offense .... (emphasis supplied)

Robbery is the knowing *"tak[ing]* [of] anything of value from the person or *presence* of another by the use of force, threats, or intimidation...." Section 18–4–301(1), C.R.S. 1998 (emphasis supplied). This crime becomes aggravated robbery if it is committed by use of a deadly weapon and the offender possesses the intent, if resisted, to kill, maim, or wound the person robbed. Section 18–4–302(1)(a), C.R.S.1998. And, of course, an "attempt" to commit a crime requires a "substantial step" towards its completion. Section 18–2–101, C.R.S.1998.

Here, by finding defendant guilty of aggravated motor vehicle theft, the jury necessarily determined that defendant improperly obtained or exercised control over the victim's motor vehicle. Defendant argues that this finding is equivalent to a finding that, for purposes of the robbery statute, he "took" that vehicle, the only difference being a matter of semantics. Hence, he says, this finding is inconsistent with the jury's finding that he only attempted to take the victim's vehicle; it is, rather, a finding that he did, in fact, take the vehicle.

The People, on the other hand, argue that, while defendant exercised control over the vehicle by threat or force, because this control was exercised through the victim and not personally, the exercise of such control did

not amount to a taking from the victim's "presence," because she remained in the vehicle. Impliedly, the People's argument is that there can be no robbery of a motor vehicle so long as the robber allows the victim to remain in the vehicle, *i.e.,* if the victim is kidnapped, he or she cannot also be robbed of that vehicle.

We agree with defendant.

First, it has uniformly been held that, for purposes of the crime of robbery, the required "taking" need not be accomplished by the personal asportation of the robber. Rather, if the robber forces another to "take" the property, a robbery has occurred. And, this is so even in those instances in which it is the victim that is compelled by the robber to move the property.

Thus, in *People v. Alexander,* 17 Mich.App. 30, 169 N.W.2d 190 (1969), an armed assailant required the clerk of a retail store to put the contents of a cash register in a bag upon the counter. Before he could take possession of the bag, however, the assailant was shot by the clerk and fled. Nevertheless, the Michigan court held that the forced removal of the cash from the cash register by the clerk, pursuant to the direction and control of the assailant, was a taking for purposes of the robbery statute.

Likewise, in *People v. Price,* 25 Cal.App.3d 576, 102 Cal.Rptr. 71 (1972), where an armed gunman forced a depositor to accompany him to a bank and to withdraw funds from the depositor's account, a taking occurred even though the gunman was arrested before the depositor handed the cash to him. In reaching this conclusion, the court upheld the trial court's refusal to instruct on the crime of attempted robbery in these words:

> In the instant case, it is undisputed that the victim moved the property from the point of its delivery to him by the bank teller until he and defendant had reached the bank door, all under defendant's dominion and control. Whether the property had actually been handed to defendant is, under these circumstances, immaterial. If defendant was guilty of any crime at all, he was guilty of a completed robbery and not of an attempt. The trial court properly refused to submit to the jury the immateri-

al issue of who held the bag when Officer Ryan intervened and properly refused to instruct on attempt.

*People v. Price, supra,* 25 Cal.App.3d at 578–79, 102 Cal.Rptr. at 72.

To essentially the same effect, *see People v. Martinez,* 274 Cal.App.2d 170, 79 Cal.Rptr. 18 (1969) and *Johnson v. State,* 432 So.2d 758 (Fla.Dist.Ct.App.1983). *See generally* 4 C. Torcia, *Wharton's Criminal Law* § 457 at 13–14 (15th ed.1996).

Here, then, there can be no question but that defendant's use of force to require the victim to move the vehicle from the place it was situated to the dead end road constituted a "taking" for purposes of the robbery statute. The only question is whether the fact that the victim remained in the vehicle meant that it was not taken from her "presence." We think not.

 In the robbery context, the term presence is not so much a matter of being in the same location as the property as it is a matter of control. *People v. Benton,* 829 P.2d 451 (Colo.App.1991). To take property from an individual's "presence," that individual must be exercising, or have the right to exercise, control over the item taken. *People v. Ridenour,* 878 P.2d 23 (Colo.App.1994). Property is taken "from the presence of another" for purposes of the robbery statute when, but for the force, threats, or intimidation directed against the victim by the perpetrator, the victim would be able to retain control over the property. *People v. Bartowsheski,* 661 P.2d 235 (Colo.1983).

Here, then, whether the motor vehicle was taken from the victim's presence was not dependent upon removal of the victim from the vehicle. Instead, the vehicle was taken from the victim's presence when, as a result of the force, threats, or intimidation directed against her, the victim lost her ability to control her possession of her motor vehicle, *i.e.,* when, as a result of the fist against her throat and the knife in her side, she was forced to drive to the dead end road against her will. *See People v. Green,* 228 Mich.App. 684, 580 N.W.2d 444 (1998) ("presence" requirement of carjacking statute, as adopted

from presence definition applied in armed robbery, fulfilled even though victims not removed from the vehicle); *Commonwealth v. George,* 705 A.2d 916 (Pa.Super.1998)(where defendant entered vehicle, displayed weapon, and forced the victim to drive to various locations, robbery of motor vehicle statute did not require forcible ejection of victim from vehicle or driver's seat; rather, robbery occurred when defendant seized control over operation of the vehicle from driver and in his presence by means of force or intimidation).

■ If a defendant's conduct constitutes the commission of more than one offense, he or she may ordinarily be prosecuted for each offense. Conviction of more than one offense is not permitted, however, when "[i]nconsistent findings of fact are required to establish the commission of the offenses." Section 18–1–408(1)(c), C.R.S.1998. Further, if the existence of an element of one of the crimes of which a defendant is convicted necessarily negates the existence of an element of another crime of which he or she was convicted, the verdicts are legally inconsistent and cannot be sustained. *People v. Gonzales,* 926 P.2d 153 (Colo.App.1996).

Consequently, because defendant's convictions for both aggravated motor vehicle theft and *attempted* aggravated robbery are factually and legally inconsistent, we must vacate defendant's attempted aggravated robbery conviction. *See People v. Lee,* 914 P.2d 441 (Colo.App.1995) (where convictions for two crimes are logically and legally inconsistent, one of the convictions must be vacated). However, because the effect of jury verdicts should be maximized, we are required to retain as many convictions and uphold as many sentences as are legally possible. *See People v. Lee, supra.*

Here, the court sentenced defendant to sixteen years for second degree kidnapping, a class 2 felony, twelve years for aggravated motor vehicle theft, a class 3 felony, and 8 years for attempted robbery, a class 4 felony, all to run concurrently.

Hence, the jury's verdicts may be maximized by vacating the conviction and sentence

* Justice SCOTT does not participate.

for attempted aggravated robbery. Because defendant's sentence for this conviction was to run concurrently with his other sentences, however, he suffered no prejudice from his sentence to imprisonment for the attempted aggravated robbery conviction. Resentencing is, therefore, not required. *See People v. Lee, supra* (by imposing concurrent sentences, the trial court in effect imposed a single penalty for both convictions, and the actual . term of imprisonment need not be modified).

The judgment of conviction for attempted aggravated robbery is vacated. The other judgments of conviction and the sentence imposed for those convictions are affirmed. The cause is remanded to the trial court with directions to amend the mittimus to reflect vacation of defendant's conviction and the sentence for attempted aggravated robbery.

Judge CASEBOLT and Judge VOGT concur.