The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Joseph WALLACE, Defendant–Appellant.

No. 02CA1012.

Colorado Court of Appeals, Div. IV.

Feb. 26, 2004.

Rehearing Denied April 15, 2004.

Certiorari Denied Aug. 16, 2004.

Ken Salazar, Attorney General, Karen E. Lorenz, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

David S. Kaplan, Colorado State Public Defender, Jud Lohnes, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge GRAHAM.

Defendant, Joseph Wallace, appeals the judgment of conviction entered on a jury verdict finding him guilty of sexual assault on a child. We affirm.

The People's evidence at trial revealed the following. Defendant lived with the victim, K.H., the victim's sister, J.H., and their father. At the time of the alleged assault, the victim was fourteen years old, and J.H. was ten years old.

One evening defendant returned home after having drinks at a restaurant with the victim's father. The victim and J.H. were asleep in their shared bedroom when he returned. Defendant went into their bedroom to see whether their father had called. Defendant sat on the edge of the victim's bed, asked her whether she was okay, and touched her breast. Although the victim moved away from his hand, he slipped his hand into her pajama bottoms and touched her vagina. The victim turned away from defendant, and defendant lay down next to her and rubbed her arm and buttocks. The victim told defendant to leave her alone, and he eventually left.

The victim got out of bed, shut the bedroom door, sat against the door crying, and told J.H. what had happened. The victim then called the police. When the police arrived, the victim answered the door, was "visibly shaken," and looked as though she had been crying. The officers spoke with the victim until they heard a scream from up-

stairs. The officers ran upstairs to find J.H. crying. She reported that she had seen defendant standing naked in the hall. J.H. pointed the officers toward defendant's bedroom to indicate where he had gone.

The officers confronted defendant, who was still naked, in his bedroom. Defendant initially denied touching the victim, but then admitted to an officer that he grabbed her arm to wake her up and might have "rolled her over."

Defendant was sentenced to lifetime probation, including a two-year work release sentence in county jail. This appeal followed.

## I.

Defendant contends the trial court erred in denying his motion to suppress his statements to police officers in the bedroom. He maintains that, because he was in custody, his statements were obtained in violation of *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). We disagree.

When we consider a trial court's suppression ruling, we defer to its findings of fact, but review de novo its conclusions of law. *People v. Smith,* 13 P.3d 300 (Colo. 2000).

Under *Miranda,* a defendant's statements made during a custodial police interrogation are inadmissible as evidence in a criminal case unless the prosecutor establishes that the defendant was advised of certain constitutional rights and waived those rights. Before a *Miranda* advisement is required, there must have been "such a restriction on a person's freedom as to render him 'in custody.'" *People v. Matheny,* 46 P.3d 453, 463 (Colo.2002). Determining whether a person is in custody requires the trial court to establish the historical circumstances of the interrogation and then consider whether there was a formal arrest or restraint of movement tantamount to a formal arrest. *People v. Minjarez,* 81 P.3d 348 (Colo.2003).

In reviewing the trial court's determination, we will not disturb its findings of fact so long as they are supported by competent evidence in the record. In reviewing the trial court's legal conclusion, we need ask only whether a reasonable person in the defendant's position would believe that his freedom of action has been limited to the degree of a formal arrest. *People v. Minjarez, supra.*

The question of custody turns on an objective assessment of whether a reasonable person in the defendant's circumstances would have believed that he was free to leave the officer's presence and does not turn on the subjective beliefs of either the suspect or the law enforcement officer. *People v. Thiret,* 685 P.2d 193 (Colo.1984); *see also United States v. Erving L.,* 147 F.3d 1240 (10th Cir.1998)(in evaluating whether a defendant was in custody, only the restraint imposed by the officers is a relevant consideration). Thus, if a defendant believed his freedom of action had been restrained to a degree associated with formal arrest, and his belief was reasonable from an objective viewpoint, then the defendant was in custody during the interrogation. *See United States v. Axsom,* 289 F.3d 496 (8th Cir.2002); *People v. Matheny, supra.*

In short, our review considers the totality of the circumstances. *People v. O'Hearn,* 931 P.2d 1168 (Colo.1997).

The following factors are applicable in evaluating the totality of circumstances: the time, place, and purpose of the encounter; the persons present during the interrogation; the words spoken by the officer to the defendant; the officer's tone of voice and general demeanor; the length and mood of the interrogation; any limitation of movement or other form of restraint placed on the defendant during the interrogation; the officer's response to any questions asked by the defendant; any directions given to the defendant during the interrogation; and the defendant's verbal or nonverbal response to such directions. *People v. O'Hearn, supra; People v. Thiret, supra.*

When a suspect is interrogated in the comfort of his home, a court is less likely to find the circumstances custodial. *United States v. Axsom, supra; United States v. Erving L., supra.*

Here, the trial court found that the questioning lasted only five to seven minutes; the officer's gun was holstered; the officer did not pull his gun nor was the gun visible to defendant; the officer's tone was conversational; there were no threats or promises; defendant was allowed to get dressed; the officer stood about four to five feet away from defendant; the lights in the bedroom were on, and the door was open; defendant was not handcuffed; the officer never touched defendant; only one officer spoke with him while in the bedroom; the officer did not block the door; defendant was not told that he could not leave; and defendant was in his own home. There is ample support in the record for these findings.

The court found that defendant was not free to go, but was "ordered out of the bathroom" and "ordered to sit in a particular place." However, the court concluded that there was "nothing, absolutely nothing about this interchange which suggests ... that an arrest has occurred." Moreover, we note that defendant did not retreat to his bedroom as the result of a chase. Instead, he was found there when his location was given by another occupant of the house.

■ We conclude that a reasonable person in defendant's position would not have believed himself at the time of questioning to have been so restrained that it was tantamount to a formal arrest. Indeed, the trial court expressly found defendant was not yet formally arrested. Thus, we conclude that defendant was not in custody for *Miranda* purposes. *See People v. Milligan*, 77 P.3d 771 (Colo.App.2003).

The trial court's conclusion, under the totality of the circumstances, that defendant was not subjected to custodial interrogation in violation of *Miranda* is supported by evidence in the record and will not be disturbed on appeal.

## II.

Defendant next contends that the trial court erred by denying his motion to introduce polygraph evidence. Specifically, the trial court did not permit defendant's expert in polygraphy to testify that he had adminis-

tered a modern polygraph test to defendant and that defendant denied the allegations with no deception indicated. We perceive no error.

■ Trial courts are vested with broad discretion to determine the admissibility of expert testimony, and the exercise of that discretion will not be overturned unless manifestly erroneous. *Masters v. People*, 58 P.3d 979 (Colo.2002). A trial court has a superior opportunity to determine the competence of the expert and to assess whether the expert's opinion will be helpful to the jury. *People v. Martinez*, 74 P.3d 316 (Colo.2003).

■ In determining whether scientific evidence is admissible, a trial court should consider whether (1) the scientific principles underlying the testimony are reasonably reliable; (2) the expert is qualified to opine on such matters; (3) the expert testimony would be helpful to the jury; and (4) the evidence satisfies CRE 403. *People v. Martinez, supra; People v. Shreck*, 22 P.3d 68 (Colo. 2001).

■ "[U]nless otherwise provided by constitution, statute, or rule, all relevant evidence is admissible." *People v. Rath*, 44 P.3d 1033, 1038 (Colo.2002)(citing CRE 402). "Evidence is relevant, in the logical sense, as long as it is 'evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.'" *People v. Rath, supra*, 44 P.3d at 1038 (quoting CRE 401). However, relevant evidence must be excluded, if "its probative value is substantially outweighed by the danger of unfair prejudice." *People v. Rath, supra*, 44 P.3d at 1038 (quoting CRE 403).

Thus, while CRE 401 and 402 reflect liberal admission of evidence, CRE 403, in conjunction with CRE 702, tempers broad admissibility by giving courts discretion to exclude expert testimony unless it passes more stringent standards of reliability and relevance. *People v. Martinez, supra.*

In *People v. Anderson*, 637 P.2d 354 (Colo. 1981), the supreme court adopted the *Frye* standard and determined that polygraph evi-

268

dence was per se inadmissible in a criminal trial because the scientific theory or technique of the polygraph was not sufficiently advanced to permit its use at trial as competent evidence of credibility. However, *People v. Shreck, supra,* abrogated the *Frye* standard and held that CRE 403 and 702 represent a better standard to evaluate the admissibility of scientific evidence because "their flexibility is consistent with a liberal approach that considers a wide range of issues." *People v. Shreck, supra,* 22 P.3d at 77. Thus, we examine whether the trial court abused its discretion under either CRE 403 or 702. *People v. Martinez, supra.*

Here, the trial court determined that CRE 403 and 702 governed the admissibility of polygraph evidence and found that the polygraph evidence was insufficiently reliable under CRE 702 and was unduly prejudicial under CRE 403 because it could influence the jury and usurp the jury's role of determining credibility of witnesses. The court also concluded that the expert could not opine about a witness's credibility.

■ Even assuming, that the polygraph evidence met the requirements of CRE 702, we agree with the trial court that introduction of the evidence would invade the province of the jury and influence its decision regarding witness credibility.

In *People v. Anderson, supra,* the supreme court similarly held that the polygraph evidence was unfairly prejudicial:

[D]ue to the unreliability of the polygraph technique and the lack of qualification standards for examiners, there is a serious risk that the admission of polygraph evidence at trial would unfairly prejudice and mislead the jury. Apart from the doubts raised about reliability and competence, however, there is an inherent danger that a jury will rely too heavily on the results of a polygraph test. Because of its aura of scientific infallibility, we believe that jurors are likely to give significant, if not conclusive, weight to a polygrapher's opinion as to whether the accused was truthful in his response to a question regarding a dispositive issue in a criminal case. The polygraph examination should not be used to usurp the jury's function in

determining truth by observing the demeanor of a witness in the course of trial. In our view, despite any cautionary instruction or admonition from the court, the jurors' traditional responsibility ... to collectively ascertain the facts to determine whether guilt has been proven would be prejudiced by the admission of polygraph evidence.

*People v. Anderson, supra,* 637 P.2d at 361 (citations omitted).

We believe that the reasoning in *Anderson* is still viable even though the *Frye* standard has been modified and conclude that the trial court was correct in refusing to admit the polygraph evidence under CRE 403, without deciding whether the polygraph evidence otherwise may have satisfied CRE 702.

■ Furthermore, opinion testimony regarding a witness's truthfulness on a specific occasion, rather than the witness's propensity for deception, is inadmissible. CRE 608(a); *Tevlin v. People,* 715 P.2d 338 (Colo. 1986); *People v. Ayala,* 919 P.2d 830 (Colo. App.1995). The expert's testimony that no deception was indicated by defendant's test results was tantamount to an expert opinion on defendant's truthfulness on a specific occasion and was thus inadmissible under CRE 608(a). *See People v. Fasy,* 829 P.2d 1314 (Colo.1992).

We thus conclude that the trial court did not err in denying defendant's motion to introduce polygraph evidence.

III.

Last, defendant contends that the prosecutor made prejudicial and improper statements during opening statement and closing argument that denied him a fair trial. Again, we disagree.

■ When, as here, a defendant fails to object to alleged prosecutorial misconduct, we may review only for plain error. *People v. Ayala, supra.* Prosecutorial misconduct constitutes plain error only when it is flagrant and glaringly or egregiously improper. *People v. Constant,* 645 P.2d 843 (Colo.1982). Further, the misconduct must undermine the fundamental fairness of the trial itself so as

to cast serious doubt on the reliability of the judgment of conviction. *Wilson v. People,* 743 P.2d 415 (Colo.1987).

 Opening statement is limited to the facts that the party intends to prove at trial. *People v. Hernandez,* 829 P.2d 394 (Colo.App.1991). Remarks later proved to be unsupported by the evidence will ordinarily constitute reversible error if there has been an affirmative showing of bad faith and manifest prejudice. *People v. Melanson,* 937 P.2d 826 (Colo.App.1996).

 The scope of final argument rests in the sound discretion of the trial court, and its rulings thereon will not be disturbed on appeal in the absence of a gross abuse of discretion resulting in prejudice and a denial of justice. *People v. Moody,* 676 P.2d 691 (Colo.1984); *People v. Salter,* 717 P.2d 976 (Colo.App.1985). Prosecutorial misconduct in closing argument rarely, if ever, is so egregious as to constitute plain error. *People v. Constant, supra.*

 A prosecutor is afforded considerable latitude in replying to an argument by defense counsel. In considering whether prosecutorial remarks are improper, the reviewing court must weigh the effect of those remarks on the trial, and also take into account defense counsel's "opening salvo." *People v. Vialpando,* 804 P.2d 219, 225 (Colo. App.1990).

 Furthermore, "[L]ack of an objection is a factor to be considered in examining the impact of a prosecutor's closing argument.... The lack of an objection may demonstrate defense counsel's belief that the live argument, despite its appearance in a cold record, was not overly damaging." *People v. Rodriguez,* 794 P.2d 965, 972 (Colo.1990)(quoting *Brooks v. Kemp,* 762 F.2d 1383, 1397 n. 19 (11th Cir.1985)).

### A.

Defendant first argues that the prosecution improperly appealed to the jury's sympathy for the victim.

 Counsel may comment on the evidence admitted at trial and the reasonable inferences that can be drawn therefrom, but may not misstate or misinterpret the law. *People v. Shepherd,* 43 P.3d 693 (Colo.App. 2001). It is impermissible for a prosecutor to use arguments that are calculated to inflame the passions or prejudice of the jury or that tend to influence jurors to issue a verdict based on preexisting biases rather than on facts in evidence and inferences drawn from those facts. *People v. Dunlap,* 975 P.2d 723 (Colo.1999); *People v. Darbe,* 62 P.3d 1006 (Colo.App.2002).

During opening statement, the prosecution stated, "[T]his is a case about the midnight cry of a child," and referred to the investigating officers as the victims and J.H.'s "savior[s]." Later, during closing argument, the prosecution said:

> Two children crying in the night. The defendant ... is responsible for those cries and for those cries of fear, for those cries for help.
>
> . . . .
>
> I'm going to ask you to come back to the courtroom and come back with a verdict telling [defendant] that he's the one responsible—responsible for [the victim and J.H.] crying in the night, crying for help, and crying out of fear, that his conduct shall not be tolerated.

During rebuttal closing argument, the prosecution argued:

> This is a home where [the victim and J.H.] lived for many years. This is a place that should be the safest place for these children in a world that is so complicated and sometimes dangerous as we now live in and the home is a safe refuge.
>
> And within a home, the ultimate place of security is the child's bedroom and especially at night when the child simply wants to go to sleep and put on her Winnie–the–Pooh pajama bottoms with the elastic waistband and know that she is getting good, safe nights [sic] sleep.
>
> . . . .
>
> We ask that you ... with your verdict hold [defendant] accountable for the behavior that he did and the cries that he instilled in these children that told it like they saw it.

We do not consider these remarks to be so objectionable as to undermine the fundamental fairness of the trial so as to cast serious doubt on the reliability of the judgment of conviction. *See Wilson v. People, supra; People v. Salazar,* 648 P.2d 157 (Colo. App.1981). The statements were based upon evidence showing that defendant inappropriately touched the victim and that, when the police arrived, both the victim and J.H. were distraught and crying as a result of defendant's conduct. *See People v. Marin,* 686 P.2d 1351 (Colo.App.1983)(doubtful that the passions of the jurors were set afire by the use of words and phrases, which represented conclusions fairly deduced from the evidence).

Furthermore, the jury was instructed that its decision must be based on the application of rules of law to the evidence presented at trial and that sympathy or prejudice should not influence its decision. Thus, the prejudicial effect, if any, of the prosecution's comments was minimal and did not cast serious doubt on the reliability of the judgment of conviction, and the general cautionary instruction to the jury was sufficient to cure any error. *See Walker v. People,* 932 P.2d 303 (Colo.1997); *People v. Sandoval,* 709 P.2d 90 (Colo.App.1985).

### B.

Defendant maintains that reversal is required because, in closing argument, the prosecutor stated his personal opinion about the credibility of witnesses.

The prosecutor stated in closing argument, "This is no made-up story. This is real." During rebuttal, the prosecutor then stated:

> One of the most—more preeminent U.S. Supreme Court Justices, Oliver Wendall [sic] Holmes said pretty much the only honest truth-telling in this world is done by children. Now, in this particular case, that quote carries a significant amount of truth and relevance.

> . . . .

> Officer [S] is a trained police officer whose simple job is to protect the peace of the community, to look for the facts, and to look for the truth. Not to say one party is more honest than the other, but to tell it like he remembers it in a report that he wrote soon after the incident.

> Same thing with Sergeant [H]. She tells it like she remembers it in her report written soon after the incident. Did the defendant take any notes or write down the memories? No. Did he show receipts from the [the restaurant]? No.

Because the truthfulness of testimony and the credibility of witnesses are matters to be determined by the jury, and not by the advocates, it is improper for counsel to express a personal belief in the truth or falsity of testimony during final argument. However, counsel may properly point to circumstances that may raise questions or cast doubt on a witness's testimony and draw reasonable inferences from the evidence as to the credibility of witnesses. *Wilson v. People, supra.*

Here, defendant's theory was that the victim and J.H. fabricated and misstated the assault. The prosecution challenged defendant's theory by pointing out that the victim and J.H.'s account of the incident remained consistent throughout the investigation and trial while emphasizing that defendant's accounts were inconsistent. During rebuttal, the prosecution was simply responding to the defense attorney's accusation that J.H. "lied under oath" and made up the story because "she never liked [defendant]" and the attorney's comments that the police officers' testimony was contradictory and did not "make sense" and that defendant's "story makes much more sense than theirs."

Because the testimony of the victim, J.H., and officers conflicted with defendant's testimony, the case turned on which witnesses the jury chose to believe.

> Since irreconcilable conflicts in the evidence could not have been the result of honest mistake, each counsel was of course entitled to argue that witnesses called by him had spoken the truth and those called by the other side had testified falsely. There was no other way to argue the case effectively.

*People v. Salter, supra,* 717 P.2d at 978 (quoting *United States v. Spain,* 536 F.2d 170 (7th Cir.1976)).

Also, the trial court instructed the jury that issues of credibility were for the jury to determine. We presume the court's instruction was understood and heeded. *People v. Herr,* 868 P.2d 1121 (Colo.App.1993).

### C.

■ Finally, defendant argues that, during rebuttal, the prosecution improperly wrapped "its argument in the cloak of state authority" and implied that the jurors were victims of the alleged crime.

The prosecution stated:

This case is entitled People of the State of Colorado v. [defendant], not [the victim and J.H.] versus the defendant. This is not a civil suit, and this is not their private battle against him. This is the defendant's violation of all of our laws.

That leads back to what the Judge said at one point during the trial—during voir dire. The defendant—the defendant violated all of our laws, yours, mine, even his, and this is not some vendetta, being the [victim's and J.H.'s] vendetta, against the defendant.

The prosecution was refuting defense counsel's allegation that this case was the victim's and J.H.'s personal vendetta against defendant, while emphasizing that defendant's conduct constituted a serious criminal violation.

### D.

Although we do not condone the prosecutor's rhetoric, we are not convinced that the statements so affected the fundamental fair-

ness of defendant's trial as to cast serious doubt on the reliability of the judgment of conviction. *See Wilson v. People, supra.* Thus, we reject defendant's contention that the error, if any, necessitates reversal.

The judgment is affirmed.

Judge CASEBOLT and Judge LOEB concur.