**The PEOPLE of the State of Colorado,**
**Plaintiff–Appellee,**

v.

**Brian LEE, Defendant–Appellant.**

No. 93CA1212.

Colorado Court of Appeals,
Div. III.

July 27, 1995.

Rehearing Denied Sept. 28, 1995.

Certiorari Denied March 25, 1996.

Gale A. Norton, Atty. Gen., Stephen K. ErkenBrack, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Jacque L. Russell, Asst. Atty. Gen., Denver, for plaintiff-appellee.

Cherner and Blackman, Barbara S. Blackman, Denver, for defendant-appellant.

Opinion by Judge BRIGGS.

Defendant, Brian Lee, appeals the judgments of conviction for first degree extreme indifference murder, three counts of attempted first degree extreme indifference murder, second degree assault, conspiracy to commit first degree assault, and conspiracy to commit menacing. Defendant asserts that the trial court erred in failing to declare a mistrial or provide an alternative remedy after two witnesses did not appear to testify and in failing to suppress evidence of a weapon found in a vehicle parked behind defendant's residence. He also contends the verdicts were logically and legally inconsistent. We vacate the judgment of conviction of attempted extreme indifference murder pertaining to the victim of the second degree assault. We affirm the other judgments of conviction. We also affirm the sentences imposed for those convictions, and we remand the cause to the trial court with directions to amend the mittimus.

## I.

On June 13, 1992, defendant, his brother, and a friend were in a night club when fighting started between two gangs. The three were members of a group affiliated with one of the gangs.

Police broke up the fight, and defendant left in a car with his brother, the friend, and a cousin. In a videotaped statement later made to the police, the cousin stated they were angry at the way they perceived the other gang had treated another of their friends.

They passed a vehicle driven by a member of the other gang who had been involved in one of the fights. According to the cousin, defendant said he would show them "what a real gang-bangin' is."

The four drove to the residence of defendant and his brother, who each retrieved a gun. The cousin told the police he got out of the car after statements by defendant and his brother. The brother said that he did not want the cousin to "get in any more trouble" and that they were "about to do some dirt." Defendant said, "There is going to be a murder tonight son, you don't need to get involved." Defendant and his brother, together with the third member of the group, got back into the car, with defendant as driver.

They soon spotted the other vehicle. Defendant pulled up alongside it, and occupants of both cars exchanged gang taunts. The occupants of defendant's car opened fire. The other vehicle crashed into a median. Defendant drove away without stopping.

The driver of the other vehicle was shot in the leg. The passenger sitting behind him was shot in the chest and died at the scene. The other two passengers were not wounded.

Police arrived shortly after the shootings. One of the passengers told the officers she knew two of the people that shot at their car, naming and giving the address of defendant and his brother. Other officers located those two, together with the friend and the cousin, at the brothers' residence. The passenger witness was taken there by police and identified defendant and the others as the occupants of the vehicle from which the shots had been fired.

After the four were arrested, the cousin and the passenger witness gave videotaped statements which, together with the earlier statements of the passenger witness, led to the issuance of a search warrant for the brothers' residence. Upon obtaining the search warrant, the police searched the house, seized a vehicle parked at the back of the property, and later found in it a semiautomatic weapon, commonly referred to as a "Tec–9."

The cousin was released from custody. Defendant and the other two suspects were tried together and convicted of the same crimes. Each was sentenced to life plus fifty years.

## II.

Defendant contends that the trial court abused its discretion in failing to declare a mistrial or grant alternative remedies upon the failure of the passenger witness to return for further testimony and of another witness to testify at all. We perceive no reversible error.

■ The grant or denial of a motion for mistrial and the restriction of cross-examination are within the discretion of the trial court. Its rulings will not be overturned on review absent a showing of an abuse of that discretion and substantial and undue prejudice to the defendant. *See People v. Chastain,* 733 P.2d 1206 (Colo.1987); *People v. Raffaelli,* 647 P.2d 230 (Colo.1982); *People v. Smith,* 620 P.2d 232 (Colo.1980). To show an abuse of discretion, an appellant must establish that, under the circumstances, the trial court's decision was manifestly arbitrary, unreasonable, or unfair. *See People v. Ibarra,* 849 P.2d 33 (Colo.1993).

■ This same standard is applicable upon review of a trial court's decision whether to grant a continuance, *see People v. Denton,* 757 P.2d 637 (Colo.App.1988), strike testimony, *see Raullerson v. People,* 157 Colo. 462, 404 P.2d 149 (1965), or admit evidence. *See People v. Ibarra, supra.*

### A.

■ The passenger witness was the principal eyewitness to the shooting. At trial she recanted her earlier identifications. She also testified briefly that on the night of the shooting she had not been drinking and was not intoxicated. But, after her testimony, she submitted a letter to the court in which she stated she had used alcohol, marijuana, and LSD the night of the shooting.

Both the defense and prosecution made extensive but unsuccessful efforts to locate the witness for further testimony on this matter. On the basis of her unavailability, defendant requested that the court either declare a mistrial, grant a continuance, strike her testimony, or admit or read her letter. The court refused all of defendant's requests.

The trial court denied defendant's motion for mistrial because the witness had been subject to extensive cross-examination at trial and the jury could draw its own conclusions from the videotape whether she was intoxicated that night and the following morning. The court likewise found no basis to continue the trial or strike her testimony. Finally, the court refused to admit the letter because it was hearsay and would have no effect on the outcome of the case.

Defendant contends that because the passenger witness was the principal eyewitness to the shooting, her ability to perceive that event and the impact that her drug use would have on her perception were relevant. While we agree that, had the witness been available, her additional testimony might have been relevant, we perceive no abuse of discretion in the court's refusal to provide the relief requested.

During both her direct and cross-examinations, contradictions between the witness' trial testimony and her prior statements were obvious. For example, in the videotaped statement she made in the hours following the shooting, she specifically recalled that defendant was driving the car and that his brother did the shooting. However, at a preliminary hearing, she testified she did not know who fired the shots and could only identify defendant and his brother as occupants of the car from which the shots were fired. At trial, her testimony was that she did not remember who was in the other car.

When asked to explain the contradictions of her prior statements and her trial testimony, the witness stated only that she did not know or did not remember. She admitted meeting with the police earlier but denied having told them she had been pressured by defendant's girlfriend. She admitted she did not like coming to court and that she had failed to show up for court appearances.

As the trial court noted, the witness' credibility was "already tattered." Recalling her to testify on this issue would only have introduced yet another contradiction and thus would have been cumulative. Furthermore, as to the collateral issue of the witness' intoxication, the jury had the opportunity to view

the videotape made a short time after the shootings.

The letter the witness submitted to the court after her testimony was hearsay and the circumstances under which it had been written were unknown. Whether or when the witness could be located was likewise unknown. Defendant failed to establish that by not being able to recall the witness he was substantially and unduly prejudiced. In these circumstances, we find no abuse of discretion in the trial court's refusal to grant any of defendant's alternative requests concerning the passenger witness.

### B.

■ The other witness who failed to testify did not see the shooting. However, he had told police that, at approximately 9:00 p.m. on the evening before the shooting, the passenger witness asked him to hold two guns she possessed but that he refused. He also had said the passenger witness told him the driver who had been shot in the leg had been shot by someone else earlier in the evening.

This witness appeared under subpoena on the first day of trial and was ordered to return at a later date. However, he did not thereafter appear in court.

Defendant moved for a mistrial. The trial court refused, finding that the testimony of the witness would provide impeachment only on a collateral matter; that there was other, conflicting evidence on this matter; and that testimony on this point would not be of great assistance to the jury.

Defendant contends that the testimony would have constituted evidence establishing the existence of weapons in the other car at the time of the shooting and was therefore critical to his theory of self-defense. However, while it could be inferred from such testimony that, because the passenger witness had possessed weapons earlier in the evening, weapons were in the other car at the time of the shootings, it could also be inferred that, because her intent had been immediately to dispose of the weapons, she had gotten rid of the weapons in the several hours that had elapsed between her conversation with the witness and the shootings.

Defendant separately argues on appeal that this witness could have testified as to whether the passenger witness, who had initially identified defendant, was intoxicated on the night of the shootings. Defendant did not present such an argument to the trial court. Furthermore, as already noted, the jury was able to view a videotape of the passenger witness made a short time after the shootings.

Because of the degree of attenuation and equivocal nature of this evidence, the trial court did not abuse its discretion in denying the motion for mistrial. *See generally People v. Rudnick*, 878 P.2d 16 (Colo.App.1993) (facts so collateral to issue that they afford only conjectural inference should not be admitted into evidence).

Defendant on appeal argues that the trial court could have admitted the transcript of the witness' statement. However, the statement was hearsay, and, in any event, defendant did not make such an alternative request at trial. We find no error in failing to admit the transcript of the statement.

### III.

Defendant asserts that the trial court erred when it denied his motion to suppress evidence of a weapon recovered from a vehicle parked behind his residence. Defendant contends in essence that the automobile exception to the Fourth Amendment's warrant requirement was inapplicable to the warrantless seizure of this vehicle because police had no probable cause to believe a weapon would be found in the vehicle and because the vehicle appeared to be inoperable. We disagree.

■ Under the automobile exception, a police officer may conduct a warrantless search of a vehicle if: (1) there is probable cause to believe that it contains evidence of a crime; and (2) the circumstances create a practical risk of the vehicle's unavailability if the search is postponed until a search warrant is obtained. *People v. Edwards*, 836 P.2d 468 (Colo.1992).

## A.

■ In the context of a search or seizure, probable cause is a flexible standard. It is satisfied by a common-sense determination that, at the time of the search or seizure, there was reasonable cause to believe that evidence of criminal activity was located in the area to be searched. It does not require a "more likely true than false" level of certainty. *See People v. Leftwich,* 869 P.2d 1260 (Colo.1994); *cert. dismissed,* —— U.S. ——, 115 S.Ct. 17, 129 L.Ed.2d 916 (1994); *People v. Melgosa,* 753 P.2d 221 (Colo.1988).

■ Here, the vehicle was seized and impounded during the course of a search of defendant's residence, yard, and garage, conducted pursuant to a search warrant. Shortly after the shooting, defendant's cousin told police that they had driven to defendant's home, that defendant had said he had the keys to the "Tec–9," and that his brother had said he knew where the "Tre–57" was. Defendant and his brother had gone around to the rear of the property, rather than through the front door, and had returned with weapons. A neighbor had reported to police that he heard the sound of a door slamming on defendant's property at about this time.

The cousin also said that defendant's brother had returned to the rear of the property after the shooting. As the trial court noted, the police arrived shortly after defendant and the others had returned to the house, increasing the likelihood that the weapons were in the immediate vicinity.

After the cousin's interview, the interviewing officer contacted an officer participating in the search of defendant's home. Bullets had been located, but not weapons. The interviewing officer instructed the police at the scene to search all sheds, garages, or vehicles in the backyard.

As the trial court also noted in denying defendant's motion to suppress, the cousin's statements suggested that defendant kept the gun in a place in or near the rear yard which was accessible only by key and that defendant's brother returned the gun to that place after the shooting. Under these circumstances, the trial court correctly determined there was probable cause to believe that a weapon might be found in the vehicle.

## B.

For the automobile exception to be applicable, there must also exist a practical risk the vehicle will be unavailable if the search is delayed. *People v. Edwards, supra.*

Here, although the vehicle had no license plates and the air pressure in its tires was low, the vehicle still could be moved by members of defendant's family or by his friends. It was not obviously immobile and was parked close to an alley, affording quick access to roads. These circumstances evidence a practical risk that the vehicle would be unavailable if police did not seize the vehicle during the search of defendant's residence. *See United States v. Hatley,* 15 F.3d 856 (9th Cir.1994); *People v. Thiret,* 685 P.2d 193 (Colo.1984).

We therefore conclude that the warrantless seizure of the vehicle was proper. Thus, the trial court's refusal on this basis to suppress evidence of the weapon later found in a search of the vehicle was not error.

## IV.

Defendant finally contends the verdicts are inconsistent. He relies on two independent theories. The first is that the jury's verdict finding that defendant did not conspire to commit first degree murder is inconsistent with its verdicts finding him guilty of extreme indifference murder and attempted extreme indifference murder. His second and separate theory is that the jury's verdicts finding that he conspired to commit felony menacing and first degree assault and that he committed second degree assault are inconsistent with the verdicts finding him guilty of extreme indifference murder and attempted extreme indifference murder. He argues that his sentences must therefore be modified.

We reject defendant's contentions with one exception. We agree that the convictions of specific intent crimes and attempted extreme indifference murder involving the same victim cannot stand. We nevertheless conclude

that no change must be made in the term of imprisonment imposed.

## A.

■ Defendant first contends that, by finding he did not conspire to commit first degree murder, the jury must have found that he did not "intend deliberately to kill, nor intend to recklessly and with extreme indifference kill, any of the occupants of the [other] vehicle." Although not articulated, defendant apparently concludes that the guilty verdicts for extreme indifference murder and attempted extreme indifference murder are inconsistent with the verdict of not guilty of conspiracy to commit first degree murder and cannot stand.

The premise of defendant's argument is that he may successfully challenge a verdict of guilt on the basis that it is inconsistent with a verdict of acquittal on another count. Subject to a statutory exception not applicable here, that premise was rejected by the supreme court in *People v. Frye,* 898 P.2d 559 (Colo.1995). Its decision is controlling. We therefore conclude that any inconsistency in his acquittal of conspiracy to commit murder provides defendant no basis to attack his convictions for extreme indifference murder and attempted extreme indifference murder.

## B.

Defendant separately contends that, by finding him guilty of conspiracies to commit felony menacing and first degree assault and guilty of second degree assault, the jury must have concluded that he specifically intended to place each occupant of the other vehicle in fear of serious bodily injury and intended to cause serious bodily injury. Yet by finding him guilty of extreme indifference murder and attempted extreme indifference murder, the jury must also have concluded that he engaged in conduct without an intent to kill or attempt to kill any specific individual within the vehicle. Defendant argues that it is inconsistent to find him guilty of acting intentionally and also find him guilty of acting with extreme indifference. We agree with defendant's analysis only in part.

We note at the outset that the supreme court's decision in *People v. Frye, supra,* does not preclude defendant from challenging what he contends are inconsistent verdicts of guilt. The court in *Frye* specifically recognized that if the existence of an element of one of the crimes negates the existence of a necessary element of the other crime, the verdicts are legally and logically inconsistent and should not be sustained. The question presented is whether the guilty verdicts challenged by defendant are legally and logically inconsistent.

■ We reject defendant's assertion that his convictions for specific intent crimes are inconsistent with his convictions for extreme indifference murder and attempted extreme indifference murder to the extent the latter verdicts pertain to victims other than the driver of the car. The argument fails because it overlooks that a defendant's intent may logically vary in committing crimes against separate victims.

The charge of second degree assault of which defendant was convicted pertained only to the driver who was shot in the leg. The jury could also have found defendant guilty of conspiracies to commit first degree assault and menacing because the agreed criminal conduct was specifically intended only for the driver. Indeed, the evidence at trial indicated that defendant and his companions had identified only the driver as having been involved in an argument at the night club.

At the same time, the jury could have found that the shots other than the one hitting the driver were not specifically intended to harm any of the other victims, but instead were fired generally in their direction. Hence, while defendant did not have the specific intent to harm any of the other three occupants, the jury could have properly determined that he was guilty of extreme indifference murder and attempted extreme indifference murder as to those three. *See* § 18–3–102(1)(d), C.R.S. (1986 Repl.Vol. 8B); *People v. Jefferson,* 748 P.2d 1223 (Colo.1988) (holding that extreme indifference murder is committed only if the killing conduct is of a type which is not directed against a particular person at all and citing as an example

firing into a moving automobile); *People v. Castro,* 657 P.2d 932 (Colo.1983) (holding there is no legal or logical inconsistency in the statutory proscription of attempted extreme indifference murder); *see also* Comment, *Extreme–Indifference Murder: The Impact of People v. Marcy,* 54 U.Colo.L.Rev. 83 (1982); *see generally,* P. Arougheti, *Imposing Homicide Liability on Gun Battle Participants for the Deaths of Innocent Bystanders,* 27 Colum.J.L. & Soc.Probs. 467 (1993–94); Comment, *The Role Of Luck In The Criminal Law,* 142 U.Pa.L.Rev. 2183 (1993–94). We therefore find no inconsistency in the verdicts finding defendant guilty of specific intent crimes and those finding him guilty of extreme indifference murder and attempted extreme indifference murder, to the extent the latter pertain to the victims other than the driver.

█ As to the driver, we agree that the guilty verdicts for conspiracy and for second degree assault are logically and legally inconsistent with the verdict of guilt for attempted extreme indifference murder. Thus, either the verdicts finding defendant guilty of the conspiracies and second degree assault or the verdict finding him guilty of attempted extreme indifference murder of the driver must be vacated. *See People v. Atkins,* 844 P.2d 1196 (Colo.App.1992).

The effect of jury verdicts should be maximized. *People v. Glover,* 893 P.2d 1311 (Colo.1995). If only the convictions for second degree assault and attempted extreme indifference murder of the driver were involved, we would therefore vacate the conviction for the lesser offense of second degree assault rather than the conviction for attempted extreme indifference murder. *See People v. Bartowsheski,* 661 P.2d 235 (Colo. 1983).

However, to retain the conviction for attempted extreme indifference murder, we would also have to vacate the convictions for conspiring to commit first degree assault and felony menacing for similar reasons. The sentences on the conspiracy convictions were imposed to run concurrent to each other, but consecutive to the other convictions. To vacate the conspiracy convictions as well as the second degree assault conviction would thus reduce the actual term of imprisonment to be served.

In contrast, the sentence for second degree assault was "merged with" and imposed concurrent to the sentence for attempted extreme indifference murder of the driver. Vacating the latter conviction and sentence would therefore not change the actual term of imprisonment.

█ We are required to retain as many convictions and uphold as many sentences as are legally possible to effectuate fully the jury's verdicts. *See People v. Glover, supra.* We therefore conclude that the effect of the jury's verdicts will be maximized by vacating the conviction and sentence for attempted extreme indifference murder imposed to run concurrent to the sentence for the conviction of second degree assault on the driver.

█ The court in effect imposed a single penalty for the convictions for second degree assault and attempted extreme indifference murder of the driver. Defendant therefore suffered no prejudice, in the sense of the term of imprisonment to be served, from the sentence imposed for the conviction of attempted extreme indifference murder of the driver. As a result, we reject defendant's contention that his actual term of imprisonment must be modified. *See People v. Atkins, supra.*

The judgment of conviction for attempted extreme indifference murder pertaining to the victim of the second degree assault is vacated. The other judgments of conviction are affirmed. The sentences imposed for those convictions are also affirmed. The cause is remanded to the trial court with directions to amend the mittimus to delete the conviction and vacate the sentence for attempted extreme indifference murder which was to run concurrent to the sentence for the second degree assault conviction.

HUME and NEY, JJ., concur.