The **PEOPLE** of the State of Colorado, Plaintiff–Appellee,

v.

David **ELLIS**, a/k/a James Wesley, Defendant–Appellant.

No. 98CA2614.

Colorado Court of Appeals, Div. IV.

Feb. 15, 2001.

Certiorari Denied Sept. 17, 2001.*

---

* Sitting by assignment of the Chief Justice under provisions of the Colo. Const. art. VI, Sec. 5(3), and § 24–51–1105, C.R.S.2000.

* Justice COATS does not participate.

Ken Salazar, Attorney General, John J. Fuerst III, Assistant Attorney General, Denver, CO, for Plaintiff–Appellee.

David S. Kaplan, Colorado State Public Defender, Martin Gerra, Deputy State Public Defender, Denver, CO, for Defendant–Appellant.

Opinion by Judge MARQUEZ.

Defendant, David Ellis, a/k/a James Wesley, appeals the judgment of conviction entered upon jury verdicts finding him guilty of two counts of criminal attempt to commit first degree extreme indifference murder, one count of first degree extreme indifference assault, and one count of crime of violence. Defendant also appeals the imposition of consecutive sentences for the two counts of criminal attempt to commit first degree extreme indifference murder. We affirm.

After being asked to leave a Christmas party in 1997, defendant turned and fired three shots from a revolver into the front door of a house filled with approximately 35 people. The bullets went through a screen door and a wooden door and struck one of the two people standing behind the doors. One of the bullets fired by defendant ricocheted off the injured victim and went into the living room where people were gathered. Defendant admitted the act of firing his gun towards the door, but claimed it was in self-defense.

Following medical treatment, the victim who was struck recovered. This person was the victim in one of the attempted first degree extreme indifference murder counts and the victim in the first degree extreme indifference assault count. The other person standing behind the door was not struck. However, this uninjured person was considered a victim for purposes of criminal attempt to commit first degree extreme indifference murder.

## I.

Defendant first contends that the trial court erred in refusing to declare a mistrial after one of the named victims testified that defendant had "shot a brother before." We are not persuaded.

During the direct examination by the prosecution, the uninjured victim stated that defendant "may have shot a brother before." Defense counsel promptly objected and asked that the testimony be stricken. The trial court agreed and also instructed the jury to disregard it. *In camera*, immediately thereafter, defense counsel moved for a mistrial, arguing that the order to disregard the statement would not cure the prejudice. The court denied the motion.

In so ruling, the court noted that the witness did not say defendant *had*, but only that he "may have" shot a brother. The court further found that the testimony surprised both the defense and the prosecution and that the curative instruction was an adequate remedy.

A mistrial is the most drastic of remedies. A trial court has broad discretion to grant or deny a mistrial, and its decision will not be disturbed on appeal absent a gross abuse of discretion and prejudice to the defendant. Furthermore, a mistrial is warranted only where the prejudice to the accused is too substantial to be remedied by other means. *People v. Abbott*, 690 P.2d 1263 (Colo.1984); *see also People v. Dore*, 997 P.2d 1214 (Colo.App.1999).

A trial court is in a better position than a reviewing court to evaluate any adverse effect that improper testimony might

have upon a jury. *People v. Price*, 903 P.2d 1190 (Colo.App.1995).

■ Here, absent evidence to the contrary, we presume that the jury followed the curative instruction and that the instruction cured any prejudice to defendant. *See People v. Lowe*, 969 P.2d 746 (Colo.App.1998); *People v. Baca*, 852 P.2d 1302 (Colo.App. 1992). Such a conclusion is especially warranted in light of the overwhelming evidence of defendant's guilt.

Consequently, this case is unlike *People v. Goldsberry*, 181 Colo. 406, 509 P.2d 801 (1973), where the court held that the trial court's instruction to disregard prejudicial testimony was not sufficient to cure the prejudice. In *Goldsberry*, the evidence was *not* overwhelming, and proof of at least one of the essential elements of the crime charged was entirely circumstantial.

## II.

Defendant next contends that the evidence was insufficient to sustain the two convictions for attempted extreme indifference murder. Specifically, he argues that either (1) the evidence failed to establish the "universal malice" necessary for attempted extreme indifference murder, or (2) the evidence failed to establish beyond a reasonable doubt that he was aware that his actions were practically certain to cause the death of either of two potential victims. We disagree.

### A. "Universal Malice"

A person commits criminal attempt if, acting with the kind of culpability otherwise required for commission of an offense, he or she engages in conduct constituting a substantial step toward the commission of the offense. Section 18–2–101(1), C.R.S.2000; *People v. Harris*, 892 P.2d 378 (Colo.App. 1994).

Here, the jury was instructed that a "substantial step" is "any conduct, whether act, omission or possession, which is strongly corroborative of the firmness of the actor's purpose to complete the commission of the offense."

The crime of extreme indifference murder requires that: (1) under circumstances evidencing an attitude of universal malice manifesting extreme indifference to the value of human life generally; (2) the defendant knowingly engages in conduct that creates a grave risk of death to a person, or persons, other than himself or herself; and (3) thereby causes the death of another. Section 18–3–102(1)(d), C.R.S.2000.

■ "Universal malice" is defined as "that depravity of the human heart, which determines to take life upon slight or insufficient provocation, *without knowing or caring who may be the victim*." *People v. Jefferson*, 748 P.2d 1223, 1228 (Colo.1988)(emphasis added)(quoting *Longinotti v. People*, 46 Colo. 173, 181, 102 P. 165, 168 (1909)). It is evinced by acts that are calculated to put the lives of many persons in danger, without being aimed at anyone in particular. The killing conduct must be of a type that is *not directed against a particular person*. *People v. Perez*, 972 P.2d 1072 (Colo.App.1998).

■ Here, although defendant knew both the injured and uninjured victims were directly behind the doors, at the time the bullets were fired, the doors were closed. The act of shooting through the doors was directed towards the house, which he knew was full of adults and children.

In spite of the fact that defendant may have been angry with the two victims, his shots could have killed any person who happened to be behind the doors or in the general vicinity. *See People v. Moore*, 902 P.2d 366 (Colo.App.1994)(although defendant's animus was first directed toward certain persons, defendant was properly convicted of extreme indifference murder when he attacked the next person to happen by); *People v. Fernandez*, 883 P.2d 491 (Colo.App.1994)(despite defendant's testimony that he just shot at a specific person, universal malice finding was sustainable where other evidence placed persons other than the victim in or near the doorway at which the defendant shot).

Significantly, when defendant's attorney asked him if he was "directing [his] fire at

any particular individual," defendant replied, "No, I wasn't."

Accordingly, ample evidence existed to establish that the defendant displayed the requisite universal malice and that he knowingly engaged in conduct creating a grave risk of death to others.

### B. Sufficiency of the Evidence

Defendant correctly points out that the culpable mental state described by the extreme indifference murder statute requires an awareness on the part of the offender that his actions were practically certain to cause the death of another. *People v. Marcy,* 628 P.2d 69 (Colo.1981). However, the evidence of defendant's purposeful firing of a revolver through the door of a house full of people is sufficient to support a conclusion that he knew his actions were practically certain to cause the death of some of the people inside.

Under that evidence, a reasonable jury could find that defendant's conduct constituted a knowing, substantial step towards the commission of the crime of extreme indifference murder, and thus, that evidence supports the two convictions.

### III.

We are not persuaded by defendant's contention that the evidence was insufficient to sustain the conviction for first degree extreme indifference assault. Specifically, defendant contends that, for the same reasons he asserted above, the conviction here should be vacated as well.

A person commits first degree extreme indifference assault when, "[u]nder circumstances manifesting extreme indifference to the value of human life, he knowingly engages in conduct which creates a grave risk of death to another person, and thereby causes serious bodily injury to any person." Section 18–3–202(c), C.R.S.2000.

Based on our discussion in part II and the reasons stated therein, we conclude that the evidence was sufficient to support defendant's conviction for first degree extreme indifference assault.

### IV.

Defendant next contends that the trial court erroneously instructed the jury on the limited applicability of self-defense. Defendant bases this contention on his own testimony that he was hit in the back of the head and heard a "bang" as he was pushed out the door. We are not persuaded.

The trial court gave the following self-defense instruction:

It is an affirmative defense to the crime of Attempted Second Degree Murder that the defendant used physical force upon another person

(1) in order to defend himself or a third person from what he reasonably believed to be the use or imminent use of unlawful physical force by the victim, and

(2) he used a degree of force which he reasonably believed to be necessary for the purpose.

It also gave the following instruction:

The affirmative defense of self defense is not a defense to: Criminal Attempt to Commit First Degree Murder, Assault in the First Degree, Criminal Attempt to Commit Reckless Manslaughter, or Assault in the Second Degree. Therefore, the affirmative defense of self defense is only an affirmative defense to Criminal Attempt to Commit Second Degree Murder.

As a threshold matter, we note that defendant did not object to this instruction at trial. Review is thus under the plain error standard. The appropriate standard for plain error review is "whether an appellate court, after reviewing the entire record, can say with fair assurance that the error so undermined the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the judgment of conviction." *Wilson v. People,* 743 P.2d 415, 420 (Colo. 1987).

Here, the trial court's instructions adequately apprised the jury of the law of self-defense. Therefore, the court did not err in rejecting the additional instructions on self-defense tendered by defendant. *See People*

*v. Willner,* 879 P.2d 19 (Colo.1994); *People v. Gallegos,* 950 P.2d 629 (Colo.App.1997).

■ Further, the affirmative defense of self-defense is not consistent with attempted first degree extreme indifference murder. Consequently, any evidence reflective of an apprehension of imminent danger was immaterial, and the trial court was correct to refuse to instruct otherwise. *See People v. Rodriguez,* 888 P.2d 278 (Colo.App.1994).

■ The trial court also correctly refused to give a self-defense instruction as to the other offenses. The use of deadly physical force may be justified only "if a person *reasonably* believes a lesser degree of force is inadequate." Section 18–1–704(2), C.R.S. 2000. (emphasis added) Defendant stated in his theory of the case instruction that he had the need to defend himself, but conceded that "he was *reckless* in his perception of the need for the force he used." (emphasis added) As the People point out, reasonableness and recklessness are inconsistent standards; thus, the court was correct in ruling that a self-defense instruction was not available.

Under the evidence presented, the trial court's instruction was a correct statement of the law.

### V.

Defendant next contends that he is entitled to resentencing because the trial court erroneously considered that his convictions for attempted extreme indifference murder were subject to mandatory crime of violence sentencing under § 16–11–309, C.R.S.2000. He asserts that because only one crime of violence count was pled and proven, crime of violence sentencing could at most apply only to one of the convictions for attempted extreme indifference murder. He further asserts that because the crime of violence count does not specify the particular attempted murder count to which it applies, the verdict must fail for lack of unanimity. We conclude that defendant is not entitled to resentencing.

Defendant was convicted of two counts of criminal attempt to commit first degree extreme indifference murder under §§ 18–2–101 and 18–3–102(1)(d), C.R.S.2000.

Section 16–11–309(1)(a), C.R.S.2000, states that: "A person convicted of two or more separate crimes of violence arising out of the same incident *shall* be sentenced for such crimes so that sentences are served consecutively ...." (emphasis added) Murder is a "crime of violence." Sections 16–11–309(2)(a)(I) & 16–11–309(2)(a)(II)(B), C.R.S. 2000. So too is criminal attempt to commit murder. Section 18–2–101(3.5), C.R.S.2000.

■ Section 16–11–309, applies in one of two ways: (1) the statute defining the offense specifically requires sentencing under that section (*per se* crimes of violence); *or* (2) the prosecution pleads and proves use, or possession and threatened use, of a deadly weapon, or serious bodily injury or death, as to eligible crimes listed in § 16–11–309(2)(a)(II), either as part of the underlying offense, or separately. *People v. Banks,* 9 P.3d 1125 (Colo.2000); *see* §§ 16–11–309(2)(a), 16–11–309(4) & 16–11–309(5), C.R.S.2000.

■ When a defendant is charged with an offense mandating sentencing under § 16–11–309, the crime is referred to as a *per se* crime of violence, and the prosecution need not plead and prove a separate crime of violence under §§ 16–11–309(4) and 16–11–309(5) in order for the sentencing provisions of § 16–11–309(1) to apply. *People v. Banks, supra.* First degree murder is not a *per se* crime of violence, *see People v. Williams,* 23 P.3d 1229 (Colo.App.2000); *People v. Webster,* 987 P.2d 836 (Colo.App.1998), and the People do not contend otherwise.

### A.

We first reject defendant's contention that his sentencing is inappropriate because only one crime of violence count was pled and proven.

Sections 16–11–309(4) and 16–11–309(5) provide in pertinent part that:

(4) In any case in which the accused is charged with a crime of violence as defined in subsection (2)(a)(I) of this section, the indictment or information shall so allege in a separate count....

(5) The jury ... in any case as provided in subsection (4) of this section shall make a specific finding as to whether the accused did or did not use, or possessed and threatened to use, a deadly weapon during the commission of such crime.... If the jury ... finds that the accused used, or possessed and threatened the use of, such deadly weapon ... the penalty provisions of this section shall be applicable.

■ When an information alleges sufficient facts to permit a defendant to prepare an adequate defense and to assure that he or she cannot be prosecuted again for the same crime, the information is sufficient even if it does not include a separate crime of violence count for each crime charged. *See People v. Pena*, 794 P.2d 1070 (Colo.App.1990)(information charging defendant with three counts of aggravated robbery and a single count of crime of violence sufficient to support consecutive sentencing for all three crimes of violence even though information did not include a separate crime of violence count for each of the three victims), *overruled on other grounds by Robles v. People*, 811 P.2d 804 (Colo.1991).

Here, count four of the amended information charged that defendant:

[d]uring the commission of the crime of Attempted First Degree Murder and lesser included offenses and the crime of Assault in the First Degree, and during the immediate flight therefrom, used, and possessed and threatened the use of a deadly weapon, to wit: *Handgun*[.]

The jury completed one verdict form finding that defendant "did use or possess and threaten the use of, a deadly weapon during the commission of the crime of criminal attempt first degree murder or criminal attempt second degree murder."

■ Further, objections to the sufficiency of an information must be made before trial or they are waived. Technical defects in the form of an information do not require reversal unless the substantial rights of the defendant are prejudiced. *People v. Hunter*, 666 P.2d 570 (Colo.1983); *People v. Joseph*, 920 P.2d 850 (Colo.App.1995).

■ Defendant here did not challenge the sufficiency of the information until this appeal. Nor has defendant made a showing that the omission of an additional crime of violence count in the information prevented him from preparing an adequate defense or would subject him to further prosecution. *See People v. Pena, supra.* As the People note, defendant effectively waived any right to challenge the sufficiency of the language in the information.

Consequently, defendant is not entitled to resentencing on this basis.

### B.

■ Additionally, the trial court instructed the jury on the general requirement of a unanimous verdict and provided the jury with a separate instruction for each count of criminal attempt to commit first degree murder. Defendant did not object to these instructions and did not tender any alternative instruction on unanimity. Nor did he raise the issue in his post-trial motion. Additionally, each of the two counts and each of the two guilty verdicts for criminal attempt to commit extreme indifference murder named a different victim. In such a case, a general instruction on the necessity of unanimity is sufficient. *See People v. Ledman*, 622 P.2d 534 (Colo.1981); *People v. Taggart*, 621 P.2d 1375 (Colo.1981). *See also People v. Marquez*, 692 P.2d 1089 (Colo.1984)(unanimity is required only with respect to the ultimate issue of defendant's guilt or innocence).

### VI.

Defendant also contends that the trial court erroneously concluded that § 16–11–309(1)(a) required consecutive sentences for the two convictions for attempted first degree extreme indifference murder. He asserts that, because identical evidence was relied on to procure the two convictions, under § 18–1–408(3), C.R.S.2000, the court had discretion as to whether to impose consecutive sentences. We are not persuaded.

Section 16–11–309(1)(a), requires consecutive, rather than concurrent, sentences for conviction of two or more separate crimes of violence arising out of the same incident. In

contrast, § 18–1–408(3) provides for concurrent sentences for convictions for two or more offenses arising from the same criminal episode and "supported by identical evidence," except that, "where multiple victims are involved, the court may, within its discretion, impose consecutive sentences."

■ Here, because we conclude that the convictions were not supported by identical evidence, we need not address whether § 18–1–408(3) applied.

In the present case, defendant fired not one, but three separate shots from his gun. Although the shots were in quick succession, the separate shots warrant the two separate counts of attempted first degree extreme indifference murder. See People v. Lee, 914 P.2d 441 (Colo.App.1995)(defendant fired multiple shots at vehicle). This view is supported by decisions of courts from other jurisdictions. See Cooper v. State, 595 P.2d 648 (Alaska 1979)(evidence that defendant fired shots in rapid succession at three police officers sufficient to support conviction on three separate counts); State v. Morrow, 888 S.W.2d 387 (Mo.Ct.App.1994)(each firing of shotgun held to be an allowable unit of prosecution); but see State v. Gonzales, 113 N.M. 221, 824 P.2d 1023 (1992)(one criminal act when defendant fired multiple shots into a truck).

■ Also, it is undisputed that defendant was convicted of two counts of attempted first degree extreme indifference murder, both crimes of violence.

In Robles v. People, 811 P.2d 804, 807 (Colo.1991), the supreme court recognized that the legislative intent behind § 16–11–309(1)(a) was to impose consecutive sentences on each and every crime of violence of which a person is convicted, and it there construed the statute as concerning "*mandatory* sentences for violent crimes." (emphasis added)

Consequently, the trial court correctly applied § 16–11–309(1)(a) and imposed consecutive sentences.

## VII.

■ Defendant also contends that, because there is no rational basis for the difference in penalties between his conviction for attempted extreme indifference murder and his conviction for extreme indifference assault against the same victim, his conviction of attempted extreme indifference murder against that victim violated his right to equal protection. We are not persuaded.

Equal protection of the laws, as guaranteed by Colo. Const. art. II, § 25, is violated "if different statutes proscribe the same criminal conduct with disparate criminal sanctions." People v. Castro, 657 P.2d 932, 940 (Colo.1983).

Attempted first degree extreme indifference murder was defined for the jury as including the elements that defendant knowingly engaged in conduct constituting a substantial step toward the commission of murder in the first degree, against the victim. The court further instructed the jury that: "One commits Murder in the First Degree if, under circumstances evidencing an attitude of universal malice manifesting extreme indifference to the value of human life generally, he knowingly engages in conduct which creates a grave risk of death to a person or persons other than himself and thereby causes the death of another."

By comparison, the jury was instructed, in pertinent part, regarding the charge of extreme indifference assault that the elements included that defendant, under circumstances where he manifested extreme indifference to the value of human life, knowingly engaged in conduct which created a grave risk of death to another person, and thereby caused serious bodily injury to the victim.

These two charges are similar. Nevertheless, we conclude that the difference between attempted first degree extreme indifference murder and assault in the first degree is not so lacking in objective content as to render the penalty differential for the offenses violative of equal protection. The supreme court has noted that the statutory definitions of attempted extreme indifference murder and of assault in the first degree are sufficiently

different to justify the resulting penalty differential. *People v. Castro, supra.*

Concededly, in the present case, we are dealing with first degree *extreme indifference* assault, not merely "regular" assault in the first degree, as in *Castro*. We determine, however, that *Castro*'s reasoning still applies.

As in the court's analysis there, the crime of attempted extreme indifference murder requires an added and critical element: the actor's conduct must constitute a substantial step towards the completion of an extreme indifference murder, which, by definition, necessarily includes the causation of another's death. Thus, attempted extreme indifference murder requires conduct that poses a real and proximate risk of death to the victim. In contrast, the crime of extreme indifference assault does not require that the actor's conduct constitute a substantial step towards the causation of another's death; instead it requires an act that created a grave risk of death but merely caused serious bodily injury. *People v. Castro, supra.*

In sum, as noted by *Castro*, attempted extreme indifference murder's heightened risk of actual death to the victim constitutes the gravamen of that offense and distinguishes it from extreme indifference assault.

We conclude that the difference in the two offenses is sufficient to create a rational basis for distinguishing the first conviction from the second.

## VIII.

■ Finally, defendant contends that by charging him with two counts of attempted extreme indifference murder for one alleged criminal act, i.e., firing three shots at two closed doors, defendant's due process right not to be charged under an information that is multiplicitous was violated. We are not persuaded.

■ A multiplicitous information refers to multiple counts covering the same criminal behavior. *See United States v. Johnson*, 130 F.3d 1420 (10th Cir.1997). The principal danger of multiplicity is that the defendant may receive multiple sentences for a single offense. *See* 4 W. Lafave, J. Israel, & N. King, *Criminal Procedure* 776 (1999).

*People v. Castro, supra*, 657 P.2d at 941, held that the substantial step required for a conviction of attempted extreme indifference murder is "conduct which poses a real and proximate risk of death to the victim."

Here, that defendant's bullets did not physically injure the second victim does not render defendant's act meaningless. Defendant's act of shooting through doors behind which he knew there were people posed a "real and proximate risk of death" to anyone who happened to be inside the house anywhere near the door.

■ We also note that the People's subsequent choice of persons to be named as victims in a crime of attempted extreme indifference murder has no significance as to whether defendant aimed his conduct "at a particular person" or at persons generally.

In light of *People v. Lee, supra*, we reject defendant's contention that his conviction was based on a multiplicitous information because he was convicted of attempted extreme indifference murder for shooting towards, but not injuring, the second victim. In *Lee*, a division of this court determined that a jury could properly determine that a defendant who shot at a vehicle was guilty of multiple counts of attempted extreme indifference murder as to two unwounded victims, who were in close proximity to two other wounded victims, one of whom died.

Accordingly, the judgment and sentence are affirmed.

Judge TAUBMAN and Judge CASEBOLT concur.