22CA1681 Peo v Garcia-Sanchez 03-06-2025

COLORADO COURT OF APPEALS

_____

Court of Appeals No. 22CA1681
City and County of Denver District Court No. 19CR8299
Honorable Ericka F. H. Englert, Judge

_____

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Alejandro Garcia-Sanchez,

Defendant-Appellant.

_____

JUDGMENT AFFIRMED IN PART AND VACATED IN PART,
AND CASE REMANDED WITH DIRECTIONS

Division II
Opinion by JUDGE LUM
Gomez, J., concurs
Fox, J., concurs in part and dissents in part

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced March 6, 2025

_____

Philip J. Weiser, Attorney General, Caitlin E. Grant, Assistant Attorney
General, Denver, Colorado, for Plaintiff-Appellee

William Holzer, Alternate Defense Counsel, Littleton, Colorado, for Defendant-
Appellant

¶ 1     Defendant, Alejandro Garcia-Sanchez, appeals five of his six convictions for attempted extreme indifference murder (AEIM) and the corresponding merged convictions for attempted extreme indifference assault (AEIA).  We affirm in part, vacate in part, and remand for correction of the mittimus.

## I.     Background

¶ 2     This case arises from an incident in which Garcia-Sanchez, aided by Codischa Robb and accompanied by Dante King and Mikal Newton, shot at a house occupied by six people: R.D. (the targeted victim), S.M., and S.M.'s four children.  None of the occupants were injured in the shooting.

¶ 3     The shooting occurred at around 4:50 a.m.  Garcia-Sanchez suggested to Robb, King, and Newton that they drive by R.D.'s house and shoot it up because R.D. was a member of a rival gang and a "snitch."  King drove the car.  As he pulled up, Robb and Garcia-Sanchez shot at the front of the house, together firing at least twenty bullets.  Afterward, they drove away.  Surveillance video and trial testimony indicated that someone returned fire from one of the first-floor bedrooms shortly before Garcia-Sanchez left the scene.

1

¶ 4     The police were alerted to the incident at approximately 4:53 a.m., and they arrived at the crime scene less than five minutes later.

¶ 5     S.M. was dressed in pajamas when police arrived.  She opened the door and let the officers into the home.  The five other individuals, three of them minors, were all found in a basement bedroom, also wearing pajamas.  None of the adults at the house cooperated with police, and none of the victims testified about where they were when the shooting occurred.[1]  A responding officer testified that the six victims had "probably been inside [the house] the whole time" during the shooting.

¶ 6     The house had two levels.  The basement level had at least one bedroom, and the ground floor had a children's bedroom, an adult's bedroom, a kitchen, a living room, a bathroom, and a garage.  In addition to discovering twenty spent shell casings in front of R.D.'s home, the crime scene investigation revealed extensive damage across the front of the house, including bullet holes in the brick

---

[1] R.D. testified but said he did not know or did not recall much of the information the prosecutor asked him about.  The other five victims did not testify.

exterior, the front door, the living room window, and another front window near the ground-level bedrooms. Bullet holes, ricochet damage, and bullet fragments were also found throughout the ground level of the house, including in the kitchen, living room, adult bedroom, and children's bedroom. Several of the bullets penetrated the wall and ceiling near a bunk bed in the children's room. None of the bullets reached the basement.

¶ 7        Garcia-Sanchez was charged with six counts of AEIM and six counts of AEIA — one for each occupant of the house. He was also charged with one count of illegal discharge of a firearm. At trial, the prosecution argued that Garcia-Sanchez was guilty of the charged crimes as a principal and as a complicitor. The jury found Garcia-Sanchez guilty as charged. At sentencing, the trial court merged the AEIA counts into the AEIM counts and sentenced Garcia-Sanchez to ninety-six years in prison. Garcia-Sanchez appeals, asserting that (1) there is insufficient evidence to support five of his convictions for AEIM and AEIA and (2) the trial court erred by failing to instruct the jury on the lesser included offense of attempted reckless manslaughter. We address each contention in turn.

## II. Sufficiency of the Evidence

¶ 8     Garcia-Sanchez asserts that there is insufficient evidence to support five of his convictions for AEIM and AEIA. We agree in part.

### A. Standard of Review

¶ 9     We review the sufficiency of the evidence de novo. *McCoy v. People*, 2019 CO 44, ¶ 63. We examine the evidence as a whole to determine whether the evidence is substantial and sufficient for a reasonable mind to conclude that the defendant is guilty beyond a reasonable doubt. *Id.*

¶ 10     "This analysis requires us to 'give the prosecution the benefit of every reasonable inference which might be fairly drawn from the evidence.'" *People v. Perez*, 2016 CO 12, ¶ 25 (quoting *People v. Gonzales*, 666 P.2d 123, 128 (Colo. 1983)). However, a verdict cannot be supported by "guessing, speculation, conjecture, or a mere modicum of relevant evidence." *Id.*

¶ 11     "The jury, not the court, must perform the fact-finding function when conflicting evidence — and conflicting reasonable inferences — are presented." *Id.* at ¶ 31. This court cannot invade the province of the jury by acting as the "thirteenth juror," and

4

where the record supports the jury's conclusion, we do not second-guess it.  *Id.* at ¶¶ 25, 31 (quoting *People v. Bennett*, 515 P.2d 466, 469 (Colo. 1973)).

### B.    Applicable Law

¶ 12    A person commits first degree extreme indifference murder if, (1) "[u]nder circumstances evidencing an attitude of universal malice manifesting extreme indifference to the value of human life generally," (2) "he knowingly engages in conduct which creates a grave risk of death" to another person, and (3) "thereby causes the death of another."  § 18-3-102(1)(d), C.R.S. 2024.

¶ 13    The crime of first degree extreme indifference assault is nearly identical, except that the end result of the crime is that the victim suffers serious bodily injury rather than death.  *See* § 18-3-202(1)(c), C.R.S. 2024.

¶ 14    A person commits criminal attempt when, acting with the "kind of culpability" required for the completed offense, he "engages in . . . a substantial step toward the commission of the offense."  § 18-2-101(1), C.R.S. 2024.  The "substantial step required for a conviction of [AEIM] is 'conduct which poses a real and proximate risk of death to the victim.'"  *People v. Ramos*, 708 P.2d 1347, 1350

(Colo. 1985) (quoting *People v. Castro*, 657 P.2d 932, 941 (Colo. 1983), *overruled on other grounds by West v. People*, 2015 CO 5). Thus, for AEIM, the prosecution is required to prove that the defendant's conduct created a grave risk of death to another. *Castro*, 657 P.2d at 938, 940. A "grave risk" of death "refers to conduct that is practically certain to cause the death of another." *Id.* at 940.

¶ 15 A defendant may be convicted of multiple counts of AEIM when his conduct endangers more than one person. *People v. Beatty*, 80 P.3d 847, 855 (Colo. App. 2003). Moreover, a victim need not suffer an injury for a grave risk of death to exist. *See People v. Lee*, 914 P.2d 441 (Colo. App. 1995) (affirming conviction of two counts of AEIM against defendant who shot at a vehicle but left two passengers unwounded); *People v. Ellis*, 30 P.3d 774 (Colo. App. 2001) (affirming conviction of two counts of AEIM when defendant fired three shots into a closed door and injured one victim but did not hit the other).

## C.  Analysis

### 1.  AEIM

¶ 16    Garcia-Sanchez concedes that the evidence at trial was sufficient to establish one count of AEIM and the corresponding merged count of AEIA because the surveillance video showed that someone in the home was returning fire from the first floor during the shooting.

¶ 17    Garcia-Sanchez doesn't specify the victim for whom he concedes sufficiency.  Three of the six victims were adults: R.D., S.M., and Y.W. (S.M.'s eighteen-year-old daughter).  The other three were S.M.'s minor children: J.M., Si.M., and Jo.M.  The jury heard evidence that J.M., Si.M., and Jo.M. were "juvenile children" and saw a still photo of the victims from an officer's body camera with three young-looking children depicted in it.[2]  The surveillance footage showed that the return fire came from a window at the front of the house, and a layout of the house showed that the children's bedroom didn't have a front-facing window.  From this evidence, and in the absence of any evidence indicating that one of the

---

[2] The jury did not hear the children's exact ages; they ranged in age from six to eleven at the time of the shooting.

7

children may have fired a weapon, it would be reasonable for the jury to infer the person returning fire was an adult. We need not decide which adult because it has no effect on our analysis.

¶ 18 For the five remaining victims — the three minor children and two of the adults — Garcia-Sanchez contends that the evidence was insufficient for a jury to conclude that his conduct put those five victims at grave risk of death because there was no evidence about where they were in the house when the shooting took place.

¶ 19 We conclude the evidence is sufficient to support the convictions as to the three minor children. The shooting took place around 4:50 a.m., when young children would normally be in bed; the only bedroom in the basement didn't appear to be a children's bedroom; one of the first floor bedrooms was a children's bedroom, containing bunk beds, stickers, and stuffed animals; that room had extensive bullet damage; and the children were all wearing pajamas when an officer encountered them in the basement bedroom a short time after the event. Given all this, a jury could reasonably infer that the children were in their bedroom during some part of the shooting and, therefore, that they were at grave risk of death. While Garcia-Sanchez argues that all five victims may have been in

basement the whole time, we must draw all reasonable inferences in favor of the prosecution. *See Perez*, ¶ 25.

¶ 20 However, we agree with Garcia-Sanchez that the evidence is insufficient to support the convictions for the other two adults. The extensive bullet damage to the first floor would have allowed the jury to reasonably infer a grave risk of death to anyone on that floor at the time of the shooting. The same cannot be said about anyone in the basement. Thus, the relevant question is whether there is any evidence from which the jury could reasonably infer that the other two adults were on the first floor (as opposed to in the basement) at the time of the shooting. The answer is no.

¶ 21 The jury didn't hear any testimony from the victims about their locations during the shooting. And unlike with the children, nothing about the hour of the shooting or the design of the rooms would permit a jury to infer (without speculating) that either adult was in any particular room or on any particular floor during the event. While either adult *could have been* on the first floor, the question is not whether Garcia-Sanchez's conduct *could have* put the victims at grave risk of death. Rather, AEIM requires proof beyond a reasonable doubt that the conduct *actually did* put the

victims at grave risk of death. *See Castro*, 657 P.2d at 941. And because the adults' location in the house is speculative, their relative risk of death is, too.[3]

## 2. AEIA

¶ 22    The People and Garcia-Sanchez do not materially distinguish between the requirements for AEIM and AEIA. Garcia-Sanchez appears to suggest, and the People don't dispute, that AEIA requires evidence that the victims were at grave risk of death or at grave risk of serious bodily injury. Assuming, without deciding, that this is the case, we reach the same outcome for AEIA as we do for AEIM. The risk of serious bodily injury from gunfire comes from bullets (and perhaps from secondary damage, such as shattered glass, caused by the bullets). Because there was no evidence that any of

---

[3] We do not trivialize the inherently dangerous nature of shooting into a house or the terror the victims must have felt, regardless of whether they were in the basement or on the first floor. Nevertheless, the extreme indifference murder statute does not criminalize conduct that is merely inherently dangerous. The law is clear that the conduct must pose a "real and proximate risk of death" to each victim. *People v. Castro*, 657 P.2d 932, 941 (Colo. 1983), *overruled on other grounds by West v. People*, 2015 CO 5; *see also People v. Beatty*, 80 P.3d 847, 855 (Colo. App. 2003) (multiple counts of AEIM permitted where conduct "endangers several people").

the bullets reached — or could have reached — the basement, the same risk analysis applies.

### 3.    Conclusion

¶ 23    For these reasons, we conclude that the evidence was insufficient to support the convictions for AEIM and AEIA as to two of the three adult victims, and we vacate those convictions and the corresponding sentences.  Garcia-Sanchez cannot be retried for those offenses.  *See People v. Lybarger*, 700 P.2d 910, 916 (Colo. 1985).

### III.    Attempted Reckless Manslaughter Instruction

¶ 24    Garcia-Sanchez contends that the trial court erred when it failed to sua sponte instruct the jury on attempted reckless manslaughter as a lesser included offense of AEIM.  We disagree.

### A.    Additional Facts

¶ 25    At the end of a jury instruction conference during which the parties discussed potential defense instructions, the trial court said to defense counsel, "I'll just ask you to think through the ramifications of asking for [a voluntary intoxication instruction] *and if you then are going to be seeking lesser-included offenses.*" (Emphasis added.)  Defense counsel responded, "No.  Again, I don't

11

anticipate doing so.  I just wanted to give the Court a heads-up . . . while we're talking about instructions.  I wanted to show all my cards."  Ultimately, neither party asked for any lesser included offense instructions, and the jury was only instructed on the charged crimes.

## B.    Analysis

¶ 26    Attempted reckless manslaughter is a lesser included offense of AEIM.  *People v. Duran*, 272 P.3d 1084, 1096 (Colo. App. 2011).  In general, a trial court is required to give a lesser included offense instruction "when there is 'a rational basis in the evidence to support a verdict acquitting [the defendant] of a greater offense . . . and convicting him of the lesser offense.'"  *People v. Draper*, 2021 COA 120, ¶ 16 (citation omitted), *overruled by Garcia v. People*, 2023 CO 30.

¶ 27    However, "[a] trial court is not obligated to instruct on a lesser included offense unless such an instruction is requested by the defense or the prosecution."  *People v. Aalbu*, 696 P.2d 796, 810 (Colo. 1985), *overruled on other grounds by Bondsteel v. People*, 2019 CO 26.  In the absence of a request for a lesser included offense instruction, "[i]t may reasonably be assumed that . . . the

defendant 'elected to take his chance on an outright acquittal or conviction of the principal charge rather than to provide the jury with an opportunity to convict him of a lesser offense.'" *Id.* at 811 (quoting *People v. Romero*, 694 P.2d 1256, 1269 (Colo. 1985)). Because neither party requested an attempted reckless manslaughter instruction, the court didn't err by not instructing the jury on that offense.

## IV. Disposition

¶ 28     The convictions as to J.M., Si.M. and Jo.M. are affirmed; the AEIM convictions, AEIA convictions, and corresponding sentences as to two of the three adult victims are vacated; and the case is remanded to the district court for correction of the mittimus.

JUDGE GOMEZ concurs.

JUDGE FOX concurs in part and dissents in part.

JUDGE FOX, concurring in part and dissenting in part.

¶ 29 I agree with my colleagues that the trial court had no obligation to, sua sponte, instruct the jury on attempted reckless manslaughter. However, on de novo review, *see McCoy v. People*, 2019 CO 44, ¶ 63, and examining the evidence as a whole to determine if it is substantial and sufficient for a reasonable mind to conclude that Garcia-Sanchez is guilty beyond a reasonable doubt, *see id.*, I respectfully disagree that the jury's verdict convicting Garcia-Sanchez of all six counts of attempted extreme indifference murder (AEIM) and attempted extreme indifference assault (AEIA) is unsupported.

### I. Indiscriminately Shooting into an Occupied Home Demonstrates Extreme Indifference to the Value of Human Life and Creates a Grave Risk of Death

¶ 30 Keeping in mind that we must "give the prosecution the benefit of every reasonable inference which might be fairly drawn from the evidence," *People v. Perez*, 2016 CO 12, ¶ 25 (citation omitted), it is eminently reasonable that a jury would — and did — convict Garcia-Sanchez of multiple counts of AEIM where his conduct — spraying a volley of bullets into an occupied home — endangered six unsuspecting people. *See People v. Beatty*, 80 P.3d

14

847, 855 (Colo. App. 2003). Moreover, a victim need not suffer an injury for a grave risk of death to exist. *See People v. Lee*, 914 P.2d 441 (Colo. App. 1995); *People v. Ellis*, 30 P.3d 774 (Colo. App. 2001).

¶ 31    Several pieces of evidence convince me to uphold the jury's six AEIM and AEIA convictions:

- six people occupied the home;

- Garcia-Sanchez and his compatriots targeted the home in the early morning hours — 4:50 a.m., according to the trial testimony; and

- Garcia-Sanchez and Codischa Robb sprayed twenty bullets directed at the front of the house that reached well inside the home.

¶ 32    Additionally, the jury could use its common sense to conclude that a home with a basement allows for fluid movement of its occupants. *See Marsh v. People*, 2017 CO 10M, ¶ 34 (the evidence, when "considered as a whole and in the light most favorable to the People, [must be] sufficient to support a conclusion by a reasonable person" that the defendant is guilty of the charged crimes); *People v. Donald*, 2020 CO 24, ¶¶ 27, 32 (recognizing that jurors (1) are

15

allowed to draw reasonable inferences from direct and circumstantial evidence; and (2) may exercise logic, including employing inference-derived inferences). Here there was no testimony that entry from the basement to the first floor was locked or otherwise impeded. The jury could also reasonably infer that, upon hearing gunshots, a person might migrate toward their origin; so a victim who was in the basement could be expected to run upstairs. It was incredibly fortunate that the six occupants of the home were not killed or seriously injured by the twenty bullets aimed at the home. However, that fortuity does nothing to remove the very real risk that Garcia-Sanchez's extremely indifferent and callous actions created, as the jury aptly recognized here. *See Perez*, ¶ 31 (cautioning that we should not invade the jury's province by acting as the "thirteenth juror") (citation omitted).

## II. Indiscriminately Shooting into an Occupied Home Demonstrates Extreme Indifference to the Value of Human Life and Also Creates a Grave Risk of Serious Bodily Injury

¶ 33 For all of the reasons provided above, I cannot reconcile the majority's judgment as to the six AEIA convictions.

16

### III. Disposition

¶ 34    For all these reasons, I would affirm the jury's verdict. Accordingly, I respectfully dissent in part and as explained in this opinion.